10 So.2d 880

## BADGETT v. DEPARTMENT OF INDUSTRIAL RELATIONS.

### 7 Div. 710.

Supreme Court of Alabama.

June 18, 1942.

Rehearing Granted Dec. 19, 1942.

Ling & Bains, of Bessemer, Isadore Katz, of Philadelphia, Pa., and David Jaffe, of New York City, for the petition.

Knox, Liles, Jones & Blackmon, of Anniston, and Frank R. Broadway and Eugene Foster, both of Montgomery, opposed.

FOSTER, Justice.

As stated in the several opinions of the members of our Court of Appeals, the question here involved is whether this appellant is disqualified for benefits under Code of 1940, Title 26, Article 4, beginning with section 205, on account of the provisions of section 214 subd. A thereof. And more specifically it is whether appellant's unemployment was directly due to a labor dispute still in active progress.

The alleged dispute grew out of what we understand is called a jurisdictional controversy between a C. I. O. affiliate and an A. F. of L. affiliate in defendant's plant. August 18, 1938, an election was held by order of the National Labor Relations Board to determine the bargaining agent of the employees, on the petition of A. F. of L., and on September 24, 1938, the board chairman certified that the C. I. O. had been selected at that election, pursuant to section 9(a) of the National Labor Relations Act of Congress, 29 U.S.C.A. § 159 (a). In Judge Rice's opinion, Ala.App., 10 So.2d 872 we are informed that "another election was held in the summer of 1940, and the C. I. O. again won by a majority of 35 to 40 votes. There was no certification by the National Labor Relations Board after this last election." Then on December 31, 1940, a closed shop agreement was made between C. I. O. and appellee, the employer. On February 3, 1941, the A. F. of L. because of the closed shop agreement began a violent and forcible obstruction and picketing, preventing the workers from going to work. This lasted until March 3, 1941. The A. F. of L. petitioned the National Labor Relations Board for another election, perhaps during the second week of the disturbance. They sent a representative who investigated and denied the petition.

Appellant was a member of the C. I. O. and voted in one or both elections.

The C. I. O. shortly before February 3, 1941, posted cards notifying workers of its contract and those who are not members that there would be no initiation fee, but only dues of $1 per month, beginning with the month of February.

The mill tried to operate, and did so for a few days under protection of officers, and then shut down the plant because they were unable to get the employees into the plant.

The question whether this employee is disqualified under section 214, subd. A, supra, depends upon whether there was a labor dispute as there defined, and, if so, whether her unemployment was directly due to such dispute.

That section of the Code had its origin in section 6 of the Act of September 14, 1935, to create a system of unemployment compensation. Acts 1935, page 950. At page 958, in subtitle (d) "During Trade Disputes," the disqualification is declared with no definition of a labor dispute. The Act of September 21, 1939, General Acts 1939, page 721, amended this feature of that of 1935, by adding the definition of a labor dispute as it now appears in section 214, subd. A, supra, Code. That definition of a labor dispute is in the same terms as such definition in the Norris-LaGuardia Act of Congress of March 23, 1932, 29 U.S.C.A. § 113(c), except that the word "tenure" in the Alabama statute does not appear in the Act of Congress, but in the exact terms of the definition in the National Labor Relations Act, 29 U.S.C.A. § 152(9).

Our section 214, subd. A, supra, Code of 1940, is as follows: "For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer."

The United States Supreme Court considered the Norris-LaGuardia definition of a labor dispute in New Negro Alliance v. Sanitary Grocery Co., 1938, 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012. The Negro Alliance had no connection with this employer, but made demands on it to employ negroes in managerial and sales positions. Upon a non-compliance they picketed the place bearing placards. But this was done without violence. 29 U.S.C.A. §§ 101 and 104 (Norris-LaGuardia Act) prohibit the issuance of an injunction, in a labor dispute, against (104(e)) giving publicity to the facts involved in any labor dispute not involving fraud or violence. It was held that this was a labor dispute, though not between employer and employees and that since there was no violence an injunction was prohibited.

And in the case of Lauf v. E. G. Shinner & Co., 1938, 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, a labor union made demand upon an employer to require all its workers to become members of the union. Upon a refusal to do so, the union staged a picketing program with alleged false and misleading signs. An injunction was sought. It was said to be governed by the Wisconsin law, which defined a labor dispute in the same language as in the Act quoted above. The Wisconsin court had held that a labor dispute existed (Senn v. Tile Layers Protective Union, 222 Wis. 383, 268 N.W. 270, 872; Id., 1937, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; American Furniture Co. v. I. B. of T. C. & H. of A. Chauffeurs, Teamsters, etc., 222 Wis. 338, 268 N.W. 250, 106 A.L.R. 335), and therefore the United States Supreme Court [303 U.S. 323, 58 S. Ct. 581, 82 L.Ed. 872] held that this decision was not only there binding but that "the facts of the instant case bring it within both" the Wisconsin act and the Norris-LaGuardia Act.

These cases involved two propositions, one, was whether there was a labor dispute, and, two, whether in the conduct of that dispute there was such violence or other condition which exempted the situation from the prohibition against an injunction. It was held that it was a labor dispute, though the disputants were not in a position of employer and employee, and that there was no violence or other exemption from the prohibition.

We do not have in this State a statute providing for an election to designate the bargaining agent, nor whereby a certification of any board in respect to such election should be treated as a settlement of a dispute between rival unions each seeking to be the bargaining agent, such as the National Labor Relations Act of Congress. But this employer was under the National Labor Relations Act. New York state has a labor relations act of similar import to the Federal Act. See McKinney's Consol. Laws, N.Y., c. 31, Labor Law, section 705.

In the case of Florsheim Shoe Store Co. v. Retail Shoe Salesmen's Union, 288 N.Y. 188, 42 N.E.2d 480, 484, decided June 4, 1942, the New York Court of Appeals has determined that there is an end of the

dispute when the legislative procedure has been followed, using the following language:

"When the contract was executed by appellants and the duly certified agent of the employees and went into effect, any labor dispute within the provisions of the New York State Labor Law ended and the contract as made was the sole enforceable contract between employers and employees. Cf. Triboro Coach Corp. v. New York State Labor Relations Board, 286 N.Y. 314, 36 N. E.2d 315. Such a result is the only conclusion possible in consonance and harmony with the public policy of the State as declared in the Labor Relations Act which was to prevent or bring to an end strikes and other forms of industrial strife and unrest and to encourage and effect industrial peace among employers and employees. United Baking Co. v. Bakery & Confectionery Workers' Union, 257 App. Div. 501, 14 N.Y.S.2d 74. The Legislature did not intend or propose that the procedure provided for that purpose should be meaningless or that it might be flaunted and made meaningless by a minority group of employees, who, themselves, had invoked the procedure to settle their dispute. The intent and purpose of the Legislature was to provide procedure for the disposal of labor controversies which, when adopted and availed of by parties to those controversies, should end disputes, not continue them."

Wherefore they also state that there was no labor dispute between the employer and an unsuccessful union after such election held under the New York law, supra, though such union was protesting by a violent strike.

The Civil Practice Act of New York, Cahill's New York Civil Practice, section 876-a, regulates injunction suits and prohibits an injunction "in any case involving or growing out of a labor dispute," and defines a labor dispute in section 876-a, subd. 10(c) as defined in our section 214 subd. A, Title 26, Code of 1940, except that it adds slightly more to it, not here material. The Florsheim case, supra, is an injunction suit, and the question was whether a labor dispute existed so as to invoke the requirements of section 876-a of the New York Civil Practice Act, supra. The holding was that when the election is held under the Labor Relations Act, supra, and duly certified, the dispute is ended (for a year, under board regulations), and the subsequent violent strike and picketing of the unsuccessful

union was not a labor dispute under their Civil Practice Act, supra.

If this question were entirely controlled by Alabama laws we might well distinguish that case here, since we have no Labor Relations Act with a declared policy.

The certification of the bargaining agent made in September, 1938, had not been altered. There was another election prior to the contract of December 31, 1940, but no new certificate issued. Whether that election was held by order of the National Labor Relations Act does not appear. But the A. F. of L. group petitioned for an election after the contract of December 31, 1940, and the board upon investigation denied it. That was in effect a ratification by the board of the existing status.

The facts show that this employer was dealing in interstate commerce and had national defense contracts on hand during the time here involved. Section 9 of the National Labor Relations Act of Congress provides that the National Labor Relations Board shall certify the name of the representative selected as the bargaining agent, 29 U.S.C.A. § 159, and may "take a secret ballot of employees." It may (section 159 (c)) take any other "suitable method to ascertain such representatives." Its order may be enforced in court. Section 160(e), 29 U.S.C.A.

It is difficult for us to distinguish this situation in principle from that discussed in the Florsheim case, supra. That case being controlled by the Labor Relations Act of New York, similar to the Act of Congress, supra. That Act and the Federal Act declared the same policy thus expressed: "By protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C.A. § 151.

We should construe the term "labor dispute" under our Act in connection with the National Labor Relations Act, when the latter applies to the situation. There seems to be no ruling of the National Labor Relations Board fixing the duration of the authority of the bargaining agent, once selected, nor does the Act so prescribe. But by section 159(c), 29 U.S.C.A., section 9(c) of the Act, the board may make investigation of such controversy, have a hearing, and may then take a secret ballot

or otherwise ascertain the representatives. There is therefore full administrative authority to settle such questions, and when "adopted and availed of by parties to those controversies, should end disputes, not continue them."

When our statute refers to and defines a labor dispute, in a situation under the jurisdiction of the National Labor Relations Act, and when by virtue of that Act, the dispute has been settled by the parties proceeding under it, the dispute should be treated as at an end. The subsequent violent and unlawful conduct of those employees who were unsuccessful in their effort by administrative means to gain the end sought were not engaged in a labor dispute, though otherwise their contention would be within the broad terms of our section 214, subd. A, supra. Pursuant to that reasoning, their violent conduct was not evidence of a labor dispute, but a riotous protest without the pale of legitimate dispute.

Every "labor objective" is not a technical "labor dispute." The latter term has a distinct significance, and is in a way analogous to a "justiciable controversy," as applied to courts. A labor dispute which is subject to the Act of Congress furnishes occasion for the administrative remedy afforded by the National Labor Relations Act of Congress, just as a justiciable controversy furnishes occasion for a suit in court.

When either situation exists and the appropriate proceeding progressed to a conclusion and determination, the "dispute," or the "controversy," (as the case may be) then merges into that determination. If a party to that dispute undertakes to renew it, outside the pale of the law, it may be a "labor objective," but it is not a "labor dispute," because that has been settled according to law. See Bakery & Pastery Drivers v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178.

The writ is granted and the judgment of the Court of Appeals reversed.

Writ granted.

Reversed and remanded.

THOMAS, BOULDIN, and BROWN, JJ., concur.

GARDNER, C. J., and LIVINGSTON, J., dissent.

KNIGHT, J., not sitting.

GARDNER, Chief Justice, and LIVINGSTON, Justice (dissenting).

We are of the opinion the legislative intent is plainly manifested in the Act here in question wherein the definition of a "labor dispute" as set forth in the federal statute was adopted as the definition to be followed in cases arising thereunder. And the decisions of the Supreme Court of the United States arising under that federal statute and noted in the majority opinion (New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872) clearly demonstrate that the facts in the instant case constitute a labor dispute, a jurisdictional dispute pure and simple. And when our statute was passed these decisions had been rendered giving such broad meaning to a labor dispute. Statutes of other states are of no interest as our Act stands alone and merely adopts the meaning of a labor dispute found in the federal statute. We consider the legislative intent too clear for further elaboration and that the treatment of this question in the opinion of Judge Simpson of the Court of Appeals suffices for all purposes, though we do not wish to be considered as committing ourselves to that part of the opinion relating to the Pesnell and Drummond cases cited therein which were controlled by the Act of 1935 and did not concern the Act of 1939 containing the present definition of a "labor dispute" and as now found in Tit. 26, § 214, subd. A, Code 1940. Ex Parte Pesnell, 240 Ala. 457, 199 So. 726.

We consider further discussion unnecessary for the reason that, as we view it, and with all due respect to the majority opinion, the opinion of Judge Simpson of the Court of Appeals fully treats the question of the change in the statute as applicable to this case, and his views thereon suffice for all purposes here and are expressive of our own conclusions.

We, therefore, very respectfully dissent.

On Rehearing.

PER CURIAM.

Upon reconsideration of this cause Justices BOULDIN and LAWSON have concluded to join in the above noted dissenting opinion of Chief Justice GARDNER and Justice LIVINGSTON. It therefore results that the rehearing in this cause is due to be granted, the order of reversal of the

judgment of the Court of Appeals set aside, and the writ denied.

It is so ordered.

Rehearing granted.

Writ denied.

GARDNER, C. J., and BOULDIN, LIVINGSTON, and LAWSON, JJ., concur.

THOMAS, BROWN, and FOSTER, JJ., dissent, and adopt the opinion of Justice FOSTER as expressive of their dissenting views. ·