53 So.2d 859

## DEPARTMENT OF INDUSTRIAL RELA-
## TIONS v. STONE et al.

### 6 Div. 195.

Court of Appeals of Alabama.

Jan. 23, 1951.

Rehearing Denied Feb. 20, 1951.

Fite & Fite, of Jasper, for appellant.

Chas. E. Tweedy, Jr., and Jas. L. Beech, Jr., of Jasper, for appellees.

CARR, Presiding Judge.

This appeal is from a judgment below in favor of five claimants for unemployment compensation. By agreement, these cases were tried jointly and the appeals have been consolidated into one record.

There is very little conflict in the evidence.

Each of the five appellees was employed by the J. M. Page Coal Company. Prior to the time of instant concern they worked on a shift basis, each receiving $12.70 per day. They used electric drills in connection with their duties; were furnished help in pushing loaded cars from the mine; and no time was deducted for any "dead work."

In the latter part of June 1949, by orders of union officials, the claimants went on a ten day vacation and during this time were absent from their employment at the mine. At the expiration of this time they reported for work and found a posted written notice which stipulated entirely new rates of pay and conditions of employment. There is a slight conflict in the evidence as to the exact verbiage of the notice. However, the evidence supports the finding that the rate of pay had been changed from a shift basis to tonnage. Incident to these new demands, claimants were required to use breast augers instead of electric drills; do all the "dead work" in connection with the mining operations; push their own coal cars; and pump accumulating water from the mine pit.

In this aspect of the evidence the claimants and other experienced coal miners testified that it was humanly impossible for one man to push or convey a loaded coal car; that the drilling could not be conveniently or successfully done with a breast auger; and that one pump was not adequate to keep the pit free of water.

In short, they testified that work could not be performed under the demanding conditions and any appreciable amount realized from their labors on a tonnage basis.

The appellees refused to work under these changed conditions, and the management ceased the operation of the mine. They did go back to their labors at a later

time when an agreement was reached satisfactory to all concerned.

Compensation was claimed for the time they were unemployed under the related circumstances.

The only question for our review is whether or not the claimants were disqualified from receiving benefits under the provisions of Title 26, Sec. 214, Subd. A, Code 1940; more specifically, whether or not there was a "labor dispute" so as to bar them from the compensation.

The General Act of 1935, No. 447, p. 950, is the progenitor of the present law. The original act did not attempt to define the term "labor dispute" as it appears in the act. The General Act of 1939, No. 497, p. 721, amended this feature by adding the definition of the term. So the present section is:

"214. An individual shall be disqualified for benefits for total or partial unemployment:—

"A. For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representative of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer."

The above definition of a "labor dispute" is in the same language as it appears in the Norris-La Guardia Act of Congress, 29 U.S.C.A. § 113(c) except that the word "tenure", found in our State statute, is not in the act of Congress, supra, but it is in the exact verbiage of the definition in the National Labor Relations Act, 29 U.S.C.A. § 152(9). Therefore the Federal court authorities which have construed this term will aid us in our interpretation of the State statute.

The prime purpose of the passage of the Alabama Unemployment Compensation Act was to provide and afford benefits for unemployed persons when this circumstance arose through no fault of the employees. In this respect it is in the nature of insurance. It is remedial in character, and the act should be liberally construed in favor of the claimant. Department of Industrial Relations v. Drummond, 30 Ala.App. 78, 1 So.2d 395, certiorari denied 241 Ala. 142, 1 So.2d 402; Tennessee, Coal, Iron & R. Co. v. Martin, 33 Ala. App. 502, 36 So.2d 535, certiorari denied 251 Ala. 153, 36 So.2d 547; Bigger v. Unemployment Compensation Comm., 43 Del. 274, 4 Terry 274, 46 A.2d 137.

The courts are committed to the view that the disqualifications from the benefits of the statute are exceptions and should be narrowly construed. Tennessee, Coal, Iron & R. Co. v. Martin, supra.

The duty of the court in construing a statute is to attempt to find the intent of the legislature. In this effort the entire act should be considered in the light of the evident purpose of its enactment.

The Supreme Court in the early case of Thompson v. State, 20 Ala. 54, stated the rule in this language: " * * * an interpretation should never be adopted which would defeat the purpose of the statute, if any other reasonable construction may be given to it, (The Emily) 9 Wheat. 381 (6 L.Ed. 116); and * * * the literal interpretation of an act is not always that which either reason or the law approves. The inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and precision not unfrequently met with, often (sic) require the court to look less at the letter or words of the statute, than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver."

Unquestionably the unemployment of instant concern was due to a dispute or disagreement over terms and conditions of employment. This, alone, is not decisive of the question at hand. To come within

the meaning and interpretation of the statute, it must be a "bona fide", as opposed to "mala fide", difference in opinion among the disputants. In other words, good faith and fair dealing must be taken into account.

 It cannot be said that the dispute is "bona fide" and there is integrity of dealings if the employer makes demands and attempts to enforce conditions that are practically impossible of fulfillment, or if undertaken will result in scarcely any remuneration for the employee.

In the case of Badgett v. Department of Industrial Relations, 243 Ala. 538, 10 So.2d 880, 883, Justice Foster, writing for the court, observed: "Every 'labor objective' is not a technical 'labor dispute.' The latter term has a distinct significance, and is in a way analogous to a 'justiciable controversy,' as applied to courts."

In Donnelly Garment Co. v. International Ladies' Garment Workers Union, D.C., 21 F.Supp. 807, it was held in effect that an employer's refusal to accede to an unauthorized and unwarranted demand does hot constitute a dispute within the meaning of the act restricting issuance of injunctions in "labor disputes" under the Norris-La Guardia Act. See also, Converse v. Highway Const. Co. of Ohio, 6 Cir., 107 F.2d 127, 127 A.L.R. 860; Lafayette Dramatic Productions, Inc. v. Ferentz, 305 Mich. 193, 9 N.W.2d 57, 145 A.L.R. 1158.

Therefore, the employees' refusal to accede to an unwarranted demand of the employer would not constitute a labor dispute, in consonance with the above rule.

We copy the seventh headnote in the case of C. G. Conn, Ltd. v. National Labor Relations Board, 7 Cir., 108 F.2d 390: "Employees who were willing to work during regular hours, but who were discharged for refusal to work overtime without additional compensation, were not on 'strike' nor engaged in a 'labor dispute' in sense bringing them within protection of the National Labor Relations Act."

Under the evidence in the instant case the court was authorized to find that the demands of the employer required the claimants to work under conditions that were practically impossible. The conclusion was also deducible that if the assigned duties could have been performed in some manner the pay on the tonnage basis would have been far below a fair living wage.

We do not want to be understood as overlooking the doctrine that in matters here presented the courts must not be concerned with the reasonableness or unreasonableness of the respective demands of the disputants. The effect of our holding is that under the evidence disclosed by this record there was not a "labor dispute" within the purview of the applicable law.

The judgment of the court below is due to be affirmed. It is so ordered.

Affirmed.