[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 798 
This is an unemployment compensation case. The State Department of Industrial Relations in appropriate proceeding found that appellant-employees were disqualified for unemployment compensation pursuant to § 214 A of Tit. 26, Code of Alabama 1940. The employees were specifically found to be disqualified because their unemployment was due to a "labor dispute." The Circuit Court of Jefferson County affirmed the determination of the Department, and appellant-employees prosecute this appeal.
The issues before us are whether the doctrines of federal preemption and res judicata prohibited the Department from acting as it did in this matter, and whether appellants' unemployment was in fact due to a labor dispute as contemplated by Tit. 26, § 214 A, Code of Alabama 1940. We decide these issues adversely to appellants, and affirm.
The somewhat involved history of this case, as revealed by the record, is as follows:
The employer in this case is Fairview Nursing Home, a sole proprietorship owned by Mrs. Esther Johnston. In early 1972, many employees of the nursing home, including appellants herein, began to considering organizing as a union. Mrs. Johnston was opposed to this course of action.
Following Mrs. Johnston's continued opposition to the union, and the discharge of several employees allegedly for union activity, it was determined that those employees assigned to the morning shift would report to work one hour late on March 11. The purpose of this protest was apparently to induce Mrs. Johnston to recognize the union.
The action decided upon was taken as planned. When the employees reported to work one hour late on March 11, they were immediately discharged by Mrs. Johnston. While it would serve no useful purpose to set out the pertinent evidence in detail, that evidence definitely establishes that the employees were discharged due to their having signed union cards and having attempted to form a union.
The discharged employees subsequently filed unfair labor practice charges against the employer with the National Labor Relations Board (hereinafter, NLRB). The NLRB found that the employer had committed various labor practices proscribed by the National Labor Relations Act, among which was the discharge of the employees on account of union activity. See § 8 (a)(3) of the Act, 29 U.S.C.A. § 158 (a)(3). The employer was ordered by the NLRB to offer to restore the discharged employees to their former positions, with back pay, and was further ordered to cease commission of the unfair labor practices which the NLRB found to have occurred. The opinion and decision of the NLRB, which was introduced into evidence, may be found at 202 N.L.R.B. No. 49.
The United States Fifth Circuit Court of Appeals affirmed the NLRB's action without opinion at 486 F.2d 1400, and the United States Supreme Court denied certiorari. 419 U.S. 827,95 S.Ct. 46, 42 L.Ed.2d 51.
Following their dismissal, the appellants herein applied to the Department of Industrial Relations for unemployment compensation. Benefits were denied, as noted earlier, on the ground that appellants' unemployment was directly due to a "labor dispute." The controlling statutory provision in this regard is Tit. 26, § 214 A, Code of Alabama 1940, which provides as follows:
 "§ 214. Disqualification for benefits. — An individual shall be disqualified for total or partial unemployment.
 "A. For any week in which his total or partial unemployment is directly due *Page 799 
to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this section only, the term `labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer."
The Circuit Court of Jefferson County affirmed the Department's finding, and appeal was perfected to this court.
 I
Able counsel for appellants initially argues that the federal jurisdiction of the NLRB is preemptive in the labor relations field, so that the Department was precluded from denying benefits to appellants on the labor dispute ground. We find no merit in this contention.
The preemptive jurisdiction of the NLRB does not extend to activity which is a merely peripheral concern of the federal labor relations acts. San Diego Building Trades Council, etc.v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. Pertinent here are the employees' rights to self-organization and to protection from certain unfair labor practices.29 U.S.C.A. §§ 157, 158. The action of the Department as presented by this case is completely collateral to the exercise of these employee rights. Disqualification from unemployment compensation on the ground of a labor dispute does not interfere in any manner with these protected rights so as to confer preemptive NLRB jurisdiction.
 II
It is also contended that the decision of the NLRB referred to above is res judicata as to the Department, so that the Department was barred from finding as it did. We do not agree.
In order for the res judicata doctrine to apply, the parties and subject matter must be the same, the point must be directly in question, and the judgment must be rendered on that point.Bryan v. W.T. Smith Lumber Co., 278 Ala. 538, 179 So.2d 287.
To this court, in this instance, the parties and the point at issue differ in the two lawsuits. One situation involves theNLRB v. Fairview Nursing Home, while the other is a proceeding between the discharged employees and the Department. In the litigation before the NLRB, the determinative question was whether unfair labor practices had occurred, while the instant proceeding was concerned with whether the employees were disqualified for unemployment compensation due to a labor dispute. Under these circumstances, we find the doctrine resjudicata does not apply.
Furthermore, the NLRB's finding that unfair labor practices occurred has no bearing on the question of whether appellants' unemployment resulted from a labor dispute, as will be discussed infra.
 III
We are now brought to consideration of the most difficult issue raised by this appeal: whether employees who are discharged due to their attempted formation of a union are unemployed due to a "labor dispute" within the meaning of Tit. 26, § 214 A, Code of Alabama 1940. We conclude that such a state of affairs is a labor dispute within the meaning of the statute.
We initially note that all the states have laws which in various forms prohibit payment of unemployment benefits to individuals who are unemployed due to labor disputes. 63 A.L.R.3d 88, at 94. However, Alabama is one of the few states which undertakes to statutorily define the term "labor dispute." Id. at 107.
The statutory definition, set out earlier, is identical to the definition of the term found in the National Labor Relations Act, 29 U.S.C.A. § 152 (9). Dept. of IndustrialRelations v. Stone, 36 Ala. App. 16, 53 So.2d 859. *Page 800 
Several theories have been advanced as to the purpose of the labor dispute disqualifications. See Shadur, UnemploymentBenefits and the "Labor Dispute" Disqualification, 17 U. of Chicago L.Rev. 294, 296-300. Professor Shadur states that the most widely accepted of these theories are as follows: (1) the unemployment compensation laws are intended to only protect against involuntary unemployment; (2) the disqualification insures governmental neutrality in labor disputes; (3) the disqualification represents a conclusion that an employer should not be required to finance strikes by his employees.
The first of these arguments has been heavily criticized with some justification; a brief perusal of the Alabama unemployment compensation law and the relevant cases will suffice to show that much involuntary unemployment is not compensable, while the opposite is true of some voluntary unemployment. Section 214 of Tit. 26, Code of Alabama 1940, provides, inter alia, that one who voluntarily leaves his job with good cause is eligible for benefits, which is not the case with the individual who is discharged by his employer with cause.
It is apparent that a much more accurate characterization of the pervasive scheme behind unemployment compensation law is that the law is intended to protect against justifiable unemployment, which may be voluntary or involuntary. Unemployment due to participation in a labor dispute is thus not justifiable within the contemplation of the statute. This is so due to the remaining two theories set out above.
It is the state's interest in neutrality which is responsible for the seemingly unanimous position among the various jurisdictions that the merits of a labor dispute are not considered in the determination of whether or not a labor dispute exists. 63 A.L.R.3d at 145. In our research, the only contrary expression which we have discovered lies in the Alabama case of Department of Industrial Relations v. Stone,supra. There the Court of Appeals recognized the general rule, but qualified it where a mala fide difference of opinion existed between the disputants.
The Stone case, supra, was strongly criticized by the Supreme Court in Alabama speaking through Justice Simpson in T.R.Miller Mill Co. v. Johns, 261 Ala. 615, 75 So.2d 675. In an extensive discussion citing various authorities, Mr. Justice Simpson held that the merits of a labor dispute are not to be considered in determining whether such a dispute in fact exists, and that the language used in that regard by the Stone
court was inapposite to its conclusion.
Thus, the general rule as to the merits of a labor dispute prevails in Alabama, and is applicable to the case before us. To hold that no labor dispute existed due to the employer's failure to recognize the appellants' union in violation of federal labor law, would be an impermissible foray into the merits of the controversy.
In this regard, it is germane to note that the Pennsylvania courts were faced with a similar situation in Burleson v.Unemployment Compensation Board of Review, 173 Pa. Super. 527,98 A.2d 762. In that case, the employer refused to bargain with its employees' union, in violation of federal law, when a previous contract between employer and union expired. In affirming a denial of benefits to workers unemployed due to the resulting work stoppage, the court by way of recognizing the general rule stated that, "Proof of a violation of the Act will not support an award."
As stated earlier, it is the governmental desire to maintain a position of neutrality as regards labor disputes in the unemployment compensation area which lies behind the doctrine of noninquiry into the merits. A separate forum exists for the resolution of labor controversies; that is, the NLRB. Matters pertaining to the merits of labor disputes are committed solely to that forum; the State Department of Industrial Relations is concerned only with whether a labor dispute exists.
The definition of the term "labor dispute" used in the statute further illustrates the state's desire to remain neutral insofar *Page 801 
as possible. As noted earlier, this definition is exactly the same as that found in the National Labor Relations Act.
As used in the Act, this broad definition was intended to provide an expansive scope to liberal and remedial legislation. It is thus somewhat anomalous, as noted in Badgett v. Dept. ofIndustrial Relations (Simpson, J., concurring in the result),30 Ala. App. 457, 10 So.2d 872, for this definition to be employed as an exception in the unemployment compensation law for the purpose of restricting rights afforded under that law. However, ". . . it may properly be stressed that the use of the term `labor dispute' by a legislature when legislative definitions of the very same term were already in effect, would indicate that the legislature intended that the term be interpreted in the same way." Williams, The Labor DisputeDisqualification — A Primer and Some Problems, 8 Vanderbilt L.Rev. 338, 342. As such, the evident legislative intent was to remove from the coverage of the unemployment compensation law those persons who are unemployed due to active participation in a labor dispute as that term is used in the National Labor Relations Act.
So viewed, the situation before us is within the ambit of the definition. Its plain meaning would include the present dispute as a ". . . controversy . . concerning the association or representation of persons in negotiating . . . terms or conditions of employment . . ." Furthermore, the definition in the National Labor Relations Act includes controversies where employees are discharged for having attempted to unionize, as the term "labor dispute" as used in the Act is jurisdictional with regard to the NLRB. 29 U.S.C.A. § 152 (9); NLRB v.International Longshoremen's Association, 4 Cir., 332 F.2d 992, 56 LRRM 2244. The NLRB could not have entertained the present controversy, as it did, unless that controversy were in fact a "labor dispute" within the meaning of the Act.
The commentators have additionally pointed out that various practical problems would arise if the existence vel non of a labor dispute for unemployment compensation purposes were dependent upon the merits of the controversy. Inconsistent and anomalous decisions would be rendered by the different decision-making bodies involved. Williams, Id., at 373. Additionally, there would be administrative difficulties, such as the fact that an employee could receive both back pay under an NLRB order and unemployment compensation for the same time period. Shadur, Id., at 307. Administrative machinery vastly more complex than that presently existing would be required for the system to function effectively.
We would finally note once more that another basis for the disqualification is that an employer should not be forced to contribute support to those who are unemployed due to labor disagreements which they have with him. The legislature made no exception for the contingency that the employer might be clearly wrong on the merits of the controversy, and we cannot by judicial fiat create one. This is not unreasonable in view of the fact that the employee has a remedy with the NLRB, to which body the resolution of labor disputes has been committed.
While we are sympathetic to those employees who lose their jobs through violation of federal laws by their employers, we feel that there are compelling reasons why they should not receive unemployment compensation if their discharge was due to a labor dispute within the meaning of Tit. 26, § 214 A, Code of Alabama 1940. In the instant situation, such a labor dispute existed. As such, and for the foregoing reasons, the case is therefore due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur. *Page 802