KIECKHEFER CONTAINER COMPANY, PROSECUTOR, v. THE UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, ITS BOARD OF REVIEW AND JOHN BOWEN, DEFENDANTS.

Argued May 8, 1940—Decided June 13, 1940.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *French, Richards & Bradley* and *Blaine E. Capehart.*

For the defendants, *Clarence F. McGovern.*

The opinion of the court was delivered by

DONGES, J.  The question involved herein is the propriety of allowing a claim for unemployment compensation benefits for the time when claimant, Bowen, was unemployed by reason of the stopping of all work in the prosecutor's plant due to a labor dispute.  Bowen admittedly was an employe of prosecutor for about fourteen years.  He was not a member of any labor union; did not attend any meetings of a labor union; did not contribute to a labor union nor participate in the dispute.  Prosecutor argues that he was in a grade or class of employes who were participating in, financing and directly interested in the labor dispute which caused the cessation of work.

It is practically conceded that Bowen is entitled to the benefits claimed, unless he comes within the provisions of the statute, now *R. S.* 43:21-5 (d) which are as follows:

"An individual shall be disqualified for benefits: * * *

"(d) For any week with respect to which it is found that his total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the board of review that:

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case in which (1) or (2) above applies separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises."

As to the first phase, namely, participation in or financing of the dispute, the testimony is clear and uncontradicted that Bowen took no part therein. Prosecutor insists that, inasmuch as he would benefit by the agreement entered into between the employer and the labor unions representing the striking employes, by the limitation of working hours, increase of pay for over-time work and temporary assignment to higher paid jobs, pay for reporting for work when there was no work to do, a vacation with pay, and concessions with regard to handling grievances and regulating and limiting discharges, he was directly interested in the labor dispute above mentioned.

The argument is that, inasmuch as every employe was interested in the improvement of his working conditions, rate of pay and other matters related to his employment, therefore,

each employe was "directly interested in the labor dispute which caused the stoppage of work." We conclude that this is a strained interpretation of the statute. The clear meaning of the language is to confine disqualification to those who are creating the dispute or participating therein in order to enforce their demands. To accept the prosecutor's construction would render every employe of a business, some of whose employes went on strike, ineligible for benefits, notwithstanding his non-participation therein and even though he might be opposed to the labor dispute and decline to have any part therein. The use of the words "directly interested in the labor dispute" clearly limits their application to those employes directly interested in its furtherance by participation and activity therein.

As to Bowen's classification or grading as an employe, it seems clear from the testimony that he cannot be placed in a class or grade any of whom were participating in or financing or directly interested, as above defined, in the dispute.

The record is none too clear as to what employes are to be included in the class of employes who precipitated the dispute. From the conclusions of the Board of Review under date of December 29th, 1939, it appears that on May 6th, 1939, the "production workers, after cleaning up their machines, left their work and refused to continue further therewith," and that the production workers refused to work until the dispute was settled. The board decided that all production workers were disqualified for unemployment compensation benefits. Throughout this case it is assumed by all parties that the strike was caused by the production workers. We shall adopt that classification and determine on the testimony the question as to whether Bowen is to be classed as a production worker.

The testimony leads to the conclusion that Bowen's work was varied; that he had no fixed duties; that he was a handy man or, as characterized by Mr. Place, the personnel director of prosecutor, a "utility man." This witness subsequently sought to change this designation, but the testimony, when taken all together, sustains the conclusion that he was a utility man, and that he was not in the class or grade of those

workers who produced the articles manufactured. Production connotes the creation of something. Hence, a production worker, for the purposes of this case, is one who is engaged in the actual making of the article created. Judged by this standard, Bowen was a laborer or handy man and not a production worker.

The decisions and judgments under review are affirmed, and the writ of *certiorari* is dismissed, with costs.