75 So.2d 165

In re Phillip U. USHER

v.

DEPARTMENT OF INDUSTRIAL RELATIONS.

6 Div. 528.

Supreme Court of Alabama.

June 30, 1954.

Rehearing Denied Oct. 7, 1954.

Lange, Simpson, Robinson & Somerville, Birmingham, for petitioner.

J. Eugene Foster, Montgomery, opposed.

White, Bradley, Arant, All & Rose, Burr, McKamy, Moore & Tate, and Martin, Turner, Blakey & Bouldin, Birmingham, amici curiæ, in opposition to the petition.

SIMPSON, Justice.

The petitioner Usher suffered involuntary unemployment from September 30, 1949, to November 13, 1949, and unless he was disqualified under the Alabama Unemployment Compensation Act he was entitled to receive benefits. The pertinent section of the act is:

"An individual shall be disqualified for total or partial unemployment:

"A. For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiations, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer." § 214, Title 26, 1951 Cum. Supp., Code 1940.

The facts out of which the unemployment arose, as found by the trial court and the Court of Appeals, are as follows: The two claimants, Usher and Ross, were employed as railroad engineers in the railroad transportation department of the Tennessee Coal, Iron and Railroad Company. United Steel Workers of America, affiliated with the CIO, was the bargaining agent for local unions Nos. 3362, 1733, and 2210. These two claimants, as well as other employees of this company in the railroad transportation department, were members of other unions not connected with or associated with the United Steel Workers of America and the CIO. Moreover, there were still other employees who were not members of any union. There were also other local unions of the United Steel Workers of America whose members were employees of T.C.I. and engaged in various phases of the company's manufacturing business. The contracts between T.C.I. and United Steel Workers of America having to do with the terms and conditions of employment of the members of the union which were local unions of the United Steel Workers expired on July 15, 1949. Negotiations failing, a strike was called for July 15, 1949. Such strike was deferred and finally fixed for the time and date of 12:01 A.M., October 1, 1949. On September 30, 1949, T.C.I. began arranging its affairs in anticipation of the strike. Notices were given the employees of the closing of operations on October 1, 1949. The claimant Usher was given notice about the middle of the afternoon on September 30, 1949, to the effect that his job had been abolished. Usher was a member of the Brotherhood of Locomotive Firemen and Enginemen, not a CIO union and not affiliated with the United Steel Workers of America. There was no controversy at that time between the T.C.I. and Usher or his union with respect to wages or other terms of employment. Neither Usher nor his union called any strike nor did he or the union take part in any strike on that occasion. Claimant Ross was not a member of any union at the time in question. He was notified of the abolishment of runs in the railroad transportation department of the company at 10:30 A.M. October 1st—ten and one-half hours after the strike had begun. There was no controversy between Ross and T.C.I. about wages or any other terms or conditions of employment. There was no labor dispute as between him and his employer. The strike did in fact take place and was not settled until November 13, 1949. T.C.I. did not attempt to operate during the strike and substantially all of its employees were out of work during that period excepting certain employees whom the striking unions had agreed should not be affected, such as would be reasonably required for protecting the property. For the last ten years the T.C.I. Company, when

strikes of this kind had occurred, had not attempted to continue its operations and induce the employees to cross picket lines. There were in fact picket lines lasting throughout the strike at the three gates in Ensley, which were the entrances to the transportation department and other departments. At the conclusion of the strike operations were resumed and the men, including the claimants, returned to work.

The petitioner here, citing Department of Industrial Relations v. Drummond, 30 Ala. App. 78, 1 So.2d 395, 398, contends that where, as instantly, the claimant or his agent or union does not participate in the labor dispute causing the unemployment, he is entitled to receive the benefits. We find the following statement in the majority opinion of the Drummond case, supra, authored by the writer of this opinion when on the Court of Appeals: "The conclusion is inescapable that the Legislature never intended that one, who has purchased his protection against involuntary unemployment, should be denied those benefits because of a 'labor dispute' in which he was in no way involved and the causes of which unemployment he, his agents or organization were powerless to avert." The defendant, on the other hand, urges that the above-quoted view expressed by the Court of Appeals in the Drummond case was in the nature of dictum and is not binding. In this the Court of Appeals concurred and so wrote.

The facts in the Drummond case were, briefly: Drummond was an employee of T. C.I. Company. At his place of employment there were also employed members of the United Mine Workers of America. When it became apparent that the T.C.I. Company would not sign a work pending agreement containing certain provisions and that the members of the United Mine Workers of America would not work after March 31, 1939, unless the work pending agreement was executed, the T.C.I. Company posted suspension of operation notices. Drummond was not a member of the striking union and did not participate in the strike, but was idle during the strike. In explanation of the complete shutdown, the vice-president of the employing company stated

that experience with previous strikes led them to believe that an attempt to operate would in all probability have led to violence, inasmuch as there were two unions in the coal mines. In the majority opinion of the Drummond case it was first stated that:

"* * * because of the apprehension of the employer company that to allow some employees to work when others (the C.I.O. affiliates) were on strike would result in violence, the appellee was locked out of work by the published notices and close down of the Wylam Mine. This, therefore, was the *direct* cause of appellee's unemployment and not the 'labor dispute' in which the C.I.O. affiliates were involved. The trial court therefore, in our opinion, correctly held, and this court also finds the fact to be, that appellee's unemployment was not 'directly due to a labor dispute still in active progress in the establishment in which he is or was last employed.'"

And continuing, it was next observed:

"True, the origin of the disaffection may have been the trade dispute or disagreement between the employer and the United Mine Workers of America, but to us the conclusion is inescapable that the Legislature never intended that one, who has purchased his protection against involuntary unemployment, should be denied those benefits because of a 'labor dispute' in which he was in no way involved and the causes of which unemployment he, his agents or organization were powerless to avert. To conclude otherwise, it appears to this court, would be to defeat the true and beneficent purposes of the statute and convert that statute into a sham and a mockery with respect to those industrial employees, as appellee, whom it must have been designed to protect against the hazards of enforced unemployment, the causes of which they were helpless to avoid. If such were not so, then a situation could be conceived and easily executed whereby a few persons could accomplish the unemployment of hundreds of innocent victims, entirely

faultless in the matter, and thereby deprive them of compensation benefits which they had bought and paid for."

Thus it is clear that the decision in the Drummond case was based on two distinct grounds, not just the one, viz., that the claimant's unemployment was ruled as not directly due to a labor dispute because of a lockout by the employer.

■ Where there are two independent reasons given for decision, each is a ruling on the case and neither one is to be considered mere dictum. There is no more reason for calling one ground a real basis for decision than the other. Each is a judgment of the court and of equal validity with the other. Union Pac. R. Co. v. Mason City & Ft. Dodge R. Co., 199 U.S. 160, 26 S. Ct. 19, 50 L.Ed. 134; U. S. v. Title Ins. & Tr. Co., 265 U.S. 472, 44 S.Ct. 621, 68 L.Ed. 1110; Armstrong v. Armstrong, 85 Cal.App.2d 482, 193 P.2d 495; Woodward v. Pacific Fruit & Produce Co., 165 Or. 250, 106 P.2d 1043, 131 A.L.R. 832; Coombes v. Getz, 217 Cal. 320, 18 P.2d 939; Jones v. Mutual Creamery Co., 81 Utah 223, 17 P.2d 256, 85 A.L.R. 908. The conclusion is obvious. The above-quoted views expressing the majority opinion of the Court of Appeals in the Drummond case was the judgment of the court and was not, as urged by the defendant and so considered by the Court of Appeals, mere dictum. On certiorari, 241 Ala. 142, 1 So.2d 402, the Supreme Court in the Drummond case, in denying the writ, stated: "Upon consideration of this cause the conclusion is reached that the majority opinion of the Court of Appeals written by Judge Simpson [the rehearing opinion was per curiam] correctly interprets the Act in question, Gen. Acts 1935, p. 950, as applicable to the facts therein stated, and that no further discussion is here necessary."

In the Drummond case the claimant's eligibility for benefits was governed by the Alabama Unemployment Compensation Act, General Acts 1935, No. 447, p. 950, which law was in effect at the time of the strike. And the court was interpreting the disqualification clause, § 6d of this act, quoted supra. The opinion in the Drummond case was delivered February 4, 1941. On Sep-

tember 21, 1939 (before the opinion in the Drummond case), an amendment to the 1935 Unemployment Compensation Act became effective. General Acts 1939, No. 497, p. 721, 736. The amended section is as follows:

"B. Disqualification for Benefits. An individual shall be disqualified for benefits for total or partial unemployment:—(a) For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this subsection only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee; provided that nothing in this subsection contained shall be applicable, either as an expression of policy or otherwise, to any claim on account of unemployment which shall have occurred in any week prior to the effective date hereof; this definition shall not relate to a dispute between an individual worker or his employer."

And although in 1943 the Alabama Unemployment Compensation Act was again amended, Gen.Acts 1943, No. 310, p. 281, 291, we find that § 8 of the act of 1943 reenacts the disqualification provision as amended in 1939. Again in 1949 and 1950-51, the legislature reenacted the disqualification provisions as amended in 1939. Gen. Acts 1949, No. 526, p. 806; Gen.Acts 1950-51, No. 565, p. 990. As aforementioned, the 1939 amendment preceded the Drummond decision by sixteen and one-half months. Necessarily, the Drummond decision cannot be considered as provocative of the 1939 amendment.

■ It is urged that the 1939 amendment to the labor dispute provisions brought about a change in the law as pertinent to the facts at bar and that the amendment

had the effect of changing the rule in the Drummond case, which was that a claimant would not be denied the benefits of the law because of a labor dispute in which he was in no way involved. In this we find ourselves in disagreement with learned counsel. An examination of the 1939 amendment discloses that the only changes wrought were a defining of the term "labor dispute" which had been undefined in the 1939 act, and the clause "an employee shall not be eligible" was amended so as to read "an individual shall be disqualified". The defendant contends that the legislature by providing that an "individual" rather than an "employee" removed what on rehearing in the Drummond case was said to be not so unambiguous as to preclude application of known rules of construction. It is to be first noted that the Supreme Court on certiorari in the Drummond case referred only to the majority opinion on original deliverance of the Court of Appeals by Simpson, J., and not to the per curiam opinion on rehearing. But in any event, the rationale employed in the rehearing opinion with regard to the word "employee" is equally applicable to the word "individual." The same ambiguity arises as to the use of both words, namely, individuals not involved as well as those concerned in the controversy. It is our opinion, therefore, that the 1939 amendment did not have the effect of overruling the doctrine of the Drummond case. As pointed out above, the legislature has on three occasions reenacted the pertinent provisions. The reenactment of a statute which has been judicially construed is an adoption of the construction. Ex parte State ex rel. Lawson, 237 Ala. 591, 188 So. 242; Nolen v. Clark, 238 Ala. 320, 191 So. 342; Law v. State, 238 Ala. 428, 191 So. 803.

The case of Badgett v. Dept. of Industrial Relations, 30 Ala.App. 457, 10 So.2d 872, certiorari denied 243 Ala. 538, 10 So.2d 880, is clearly distinguishable from the case at bar. In the Badgett case a jurisdictional controversy between rival unions arose and the unemployment of the claimant was directly caused by a dispute between the claimant's union and a rival organization still in active progress in the same establishment.

Appellee (respondent here) calls our attention to the case of Tennessee Coal, Iron & R. Co. v. Martin, 33 Ala.App. 502, 36 So.2d 535, 536, wherein the claimant was a coal miner who belonged to the United Mine Workers of America (A.F. of L. at that time); the men employed in the coal mines at the T.C.I. Company were working peaceably under a contract and were not on strike and were not negotiating a new contract; they were not, in fact, having any discussion with the employer. The employees belonging to the United Steel Workers of America (CIO) and the ore miners belonging to the International Union of Mine, Mill and Smelter Workers (CIO) went on strike. The coal miners did not participate and were not responsible, but the strike of the aforementioned two unions prevented the operation of the coal mines and all other units of the T.C.I. Company. The lower court held that the claimant (the coal miner) was entitled to compensation. Upon appeal to the Court of Appeals, the majority opinion of that court stated:

"In his [dissenting] opinion Judge Bricken states that 'The parties also seem to be in accord that the strike above referred to was a labor dispute within the meaning of such section.' We are unable to accord to the contentions of appellees' counsel, urged in oral argument and in briefs filed, the conclusion reached by Judge Bricken as to such accord. As we interpreted the argument and briefs of counsel representing the appellees they strenuously contend that there is no labor dispute within the meaning of our statute and judicial interpretations thereof.

"However, since the 1939 Amendment to Section 214, subd. A Title 26, Code of Alabama 1940, defining a 'labor dispute' as the term is defined in National Labor Relations Act, 29 U.S. C.A. § 151 et seq., and the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., it is our opinion that appellees'

unemployment was directly due to a labor dispute. Section 214, subd. A supra. Badgett v. Department of Industrial Relations, 30 Ala.App. 457, 10 So.2d 872; [Id.] 243 Ala. 538, 10 So.2d 880; New Negro Alliance v. Sanitary Grocery, 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872.

"It is our opinion therefore that lower court erred in its reasoning that appellee's unemployment did not result directly from a labor dispute."

It appears that the majority of the court were in disagreement with Judge Bricken's conclusion that the parties were in accord on the question of whether or not there was in fact a labor dispute. It also seems from the above-quoted paragraphs that the Court of Appeals was holding that under the facts and the 1939 Amendment to § 214, Title 26, there did exist a labor dispute; and so such case may not be authority for a holding that the claimant's unemployment was directly due to a labor dispute. An examination of the cases cited by the Court of Appeals in the Martin case as authority for the statement, "appellee's unemployment was directly due to a labor dispute", adds weight to this conclusion, for the reason that in each of the three cited cases the pivotal question involved was whether or not a labor dispute in fact existed.

On the other hand, if the last-quoted observation by the Court of Appeals in the Martin case is construed to be inconsistent with what was said in the Drummond case, it might well be said that such observation was in the nature of dictum. This for the reason that the Court of Appeals, after recognizing that § 214 of Title 26 requires that in order to disqualify a workman from receiving benefits, the labor dispute must be in active progress and in the establishment in which he is or was last employed, held that the labor dispute was not in the establishment in which the claimant was last employed, and the claimant therefore was entitled to recover. The answer to this single question was decisive of the case; there were not two reasons for

holding that the claimant was entitled to benefits, as there were in the Drummond case.

In any event, this court on certiorari specifically left undetermined this "directly due" question, for as was pointed out above, the Court of Appeals in the Martin case did affirm the holding of the trial court allowing the claimants to recover on the ground that the mines in which the claimants were employed were an establishment separate from the establishment in which a labor dispute was in progress, 251 Ala. 153, 36 So.2d 547, 554. In affirming the judgment of the Court of Appeals, this court, speaking through the late, lamented Chief Justice Gardner, made the following observations concerning the opinion of the Court of Appeals:

"Reduced to a simple analysis, that opinion [Court of Appeals] merely holds that the coal mines in which there was no labor dispute was an 'establishment' within the meaning of our Unemployment Compensation Statute. * * *

*    *    *    *    *    *

"In view of the further holding of the Court of Appeals, however, that this complainant's unemployment was directly due to a labor dispute, it becomes necessary for us to observe that in view of our affirmance of the judgment of the Court of Appeals upon the ground above noted, and upon which that court based its ruling, a discussion and consideration of this question becomes unnecessary and is therefore left to one side.

"Upon the part of the appellee the insistence is that the Drummond case is decisive in their favor and upon that theory the three judge trial court rested its decision. While on the other hand appellant insists that the Drummond case was to be differentiated though it contains dictum supportive of the trial court. Upon this question there may here be a difference of view. Whatever might be said, however, upon that question would itself be dictum, and

as a general rule the courts very properly decline to enter into discussions which are not decisive of the case. We merely make these observations to the end that we may not be bound by the holding of the Court of Appeals upon this particular question. It is left here undetermined."

As we have attempted to illustrate, neither the legislature nor the Supreme Court of this state has changed or modified the rule of the Drummond case; such is the law today and governs this case to the result that petitioner was not disqualified from receiving unemployment compensation.

Reversed and remanded.

STAKELY, MERRILL and CLAYTON, JJ., concur, except MERRILL, J., prefers *not to be committed to the view that sub-sequent amendments to the Act with no change in the considered Section and the 1939 amendment has any persuasive effect on the question.*

GOODWYN, Justice (dissenting).

Certiorari to the Court of Appeals was granted to review the judgment and decision of that court in the case of Usher v. Department of Industrial Relations, 37 Ala. App. 698, 75 So.2d 159.

As I see it, the question presented, stated simply, is this: When it is determined that an individual's unemployment is "directly due to a labor dispute", is he nevertheless entitled to benefits under the Alabama Unemployment Compensation Act, Code 1940, Tit. 26, Chapter 4, §§ 180–252, as amended, if it be found that he was not involved in any way in such labor dispute? To answer the question calls for consideration of the meaning of the following portion of the Act, § 214, Subd. A, as amended:

"§ 214. Disqualification for benefits.—An individual shall be disqualified for total or partial unemployment:

"A. For any week in which his total or partial unemployment is direct-ly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer. * * *."

The trial court, as appears from the opinion of the Court of Appeals, made a special finding of fact that the unemployment of claimant-employee Usher resulted from a "labor dispute" between his employer and a union of which Usher was not a member; and further finding that there was no controversy at that time between said employer and Usher or his union with respect to wages or other terms of employment, and that "neither Usher nor his union called any strike, nor did he or his union take part in any strike on that occasion". On appeal to the Court of Appeals, that court affirmed the trial court's conclusion that Usher could not recover unemployment benefits since his unemployment, under the facts as found, was directly due to a "labor dispute".

A full statement of the facts as found by the trial court and the Court of Appeals is set out in the opinion of the Court of Appeals.

The position taken by petitioner is thus stated in his brief:

"It is our contention that the prior decisions of the Supreme Court and the Court of Appeals support the petitioner's contention; that he is entitled to unemployment benefits. The wording of the statute, and particularly the legislative intent of the statute, protects him when the negotiations prior to or at the time of the strike were not participated in by him or by his agent

or representative or by the union to which he belonged."

I think, therefore, that a brief review of the history of the statute and the decisions dealing with it will be helpful in arriving at a decision.

The Alabama Unemployment Compensation Act, as first enacted in 1935, Act No. 447, appvd. Sept. 14, 1935, Gen.Acts 1935, p. 950, contained the following provision:

> "Section 6. Benefits Eligibility Conditions * * * (d) During Trade Disputes. An employee shall not be eligible for benefits for any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed."

In 1939, Act No. 497, appvd. Sept. 21, 1939, Gen.Acts of 1939, pp. 721–735, the quoted portion of Section 6 of the 1935 Act was amended so as to read as follows:

> "Section 6. * * * B. Disqualification for Benefits. An *individual* shall be disqualified for benefits for total or partial unemployment:—(a) For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; *for the purposes of this subsection only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee; provided that nothing in this subsection contained shall be applicable, either as an expression of policy or otherwise, to any claim on account of unemployment which shall have occurred in any week prior to the effective date hereof: this definition shall not relate to a dispute between an individual worker or his employer.* * * * " [Italics supplied.]

The italicized portion shows the changes made by the amendment. The 1935 Act used the word "employee" instead of "individual". The other part of the amendment is entirely new.

As thus amended, Section 6, Subd. B (a) was carried into the Code of 1940 as Section 214, Subd. A, Tit. 26, supra. Section 214 has been subsequently amended, Act No. 310, appvd. June 28, 1943, Gen. Acts 1943, pp. 281, 291; Act No. 526, appvd. Sept. 2, 1949, Gen.Acts 1949, p. 806; Act No. 565, appvd. Aug. 31, 1951, Gen.Acts 1951, pp. 990, 991, but not so as to change Subd. A. Accordingly the provisions of Subd. A have continued unchanged as a part of the Unemployment Compensation Act since the 1939 amendment, which was approved September 21, 1939, and became effective on September 30, 1939.

There have been several cases in this jurisdiction bearing on the question now before us. However, I do not think it can be said that the question has been authoritatively dealt with and determined, although there appear to be conflicting expressions in two of the cases with respect to the meaning of Subd. A. Department of Industrial Relations v. Drummond, 1941, 30 Ala.App. 78, 1 So.2d 395, certiorari denied 241 Ala. 142, 1 So.2d 402; Tennessee Coal, Iron & R. Co. v. Martin, 1948, 23 Ala.App. 502, 36 So.2d 535, certiorari denied 251 Ala. 153, 36 So.2d 547.

The first case dealing with the statute was Department of Industrial Relations v. Pesnell, 1940, 29 Ala.App. 528, 199 So. 720, certiorari denied Ex parte Pesnell, 240 Ala. 457, 199 So. 726, certiorari denied 313 U.S. 590, 61 S.Ct. 1113, 85 L.Ed. 1545. That case arose under the original act as passed in 1935. As already noted, that act contained only the provision that:

> "An employee shall not be eligible for benefits for any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed."

The question there involved was whether the unemployment was directly due to a

"labor dispute", as that term was used in the act. Since the act contained no definition of a "labor dispute", it became necessary to construe that term and apply it to the facts there present which, in summary, were as follows: The claimant, Pesnell, was a member of an Alabama local union of the United Mine Workers of America and was employed by the Tennessee Coal, Iron and Railroad Company at its Edgewater mines in Alabama. His union would not make a new contract with his employer until an agreement with the United Mine Workers of America for the Appalachian area was reached, but did propose a work-pending agreement which would bind the employer to accept certain provisions in any agreement reached for the Appalachian area. The employer would not accept such work-pending agreement. The Court of Appeals held that the resulting unemployment was directly due to a "labor dispute" as that term was used in the act, and that Pesnell was ineligible for benefits. On certiorari, the Supreme Court, speaking through the late lamented Chief Justice Gardner, approved the findings of the Court of Appeals, and made the following observation:

"Authorities elsewhere are of little value as much, of course, depends upon the wording of the statutes of the various states. In some of them, notably Colorado and Ohio, a strike or lockout must result, for such are the express terms of the statute. But no such language is found in our statute and nothing therein appears which would justify such an interpretation."

Except for this recognition of the restrictive wording of the Alabama statute, the Pesnell case has no particular application to the case now before us.

The next decision was that of Department of Industrial Relations v. Drummond, 1941, 30 Ala.App. 78, 1 So.2d 395, 397, certiorari denied 241 Ala. 142, 1 So.2d 402, supra. In the majority opinion of the Court of Appeals written by Judge Simpson, now Mr. Justice Simpson of this court, it was stated that:

"The question here is whether the unemployment of appellee was di-

rectly due to the labor dispute, held to have prevailed in the Pesnell case, supra, so as to render him ineligible for compensation under the Act—as that term is employed in Section 6(d) thereof * * *."

(Although the decision in the Drummond case, supra, was handed down in 1941, the law there involved was Section 6(d) of the 1935 Act and not the 1939 amendment.) The answer to this question was as follows:

"It thus appears that, because of the apprehension of the employer company that to allow some employees to work when others (the CIO affiliates) were on strike would result in violence, the appellee was locked out of work by the published notices and close down of the Wylam Mine. This, therefore, was the *direct* cause of appellee's unemployment and not the 'labor dispute' in which the CIO affiliates were involved. The trial court therefore, in our opinion, correctly held, and this court also finds the fact to be, that appellee's unemployment was not 'directly due to a labor dispute still in active progress in the establishment in which he is or was last employed.' "

However, in the paragraph following the foregoing, the opinion goes on to say that "the conclusion is inescapable that the Legislature never intended that one, who has purchased his protection against involuntary unemployment, should be denied those benefits because of a 'labor dispute' in which he was in no way involved and the causes of which unemployment he, his agents or organization were powerless to avert."

On certiorari, this court denied the writ, saying, through the late Chief Justice Gardner, as follows:

"Upon consideration of this cause the conclusion is reached that the majority opinion of the Court of Appeals written by Judge Simpson correctly interprets the Act in question, Gen.Acts 1935, p. 950, *as applicable to*

*the facts therein* stated, and that no further discussion is here necessary." [Emphasis supplied.]

The next case was Badgett v. Department of Industrial Relations, 1942, 30 Ala. App. 457, 10 So.2d 872, 878, certiorari denied 243 Ala. 538, 10 So.2d 880, 883. In that case a strike was called by the union representing the minority group of employees in protest against a closed shop contract procured by a rival union designated as the bargaining agent for all the employees. Picket lines prevented members of the controlling union from working. It was held that the unemployment of a union member who voted for the closed shop agreement was due to a "labor dispute" and therefore, noncompensable under the provisions of Section 214, Subd. A, supra, of the Alabama Unemployment Compensation Act.

An opinion was written by each of the judges of the Court of Appeals. Judge Simpson, concurring only in the conclusion reached by Presiding Judge Bricken, had this to say:

"It is my view that the Pesnell case (Department of Industrial Relations v. Pesnell, 29 Ala.App. 528, 199 So. 720) is decisive of the question under consideration, and that the principle announced in the Drummond case, [30] Ala.App. [78], 1 So.2d 395, 398, is inapplicable.

"In Drummond it was declared: 'The Legislature never intended that one, who has purchased his protection against involuntary unemployment, should be denied those benefits because of a "labor dispute" in which he was in no way involved and the causes of which unemployment he, his agents or organization were powerless to avert.'

"But, when the unemployment of a member of a labor union is directly caused by a dispute between that member's union and a rival organization, still in active progress in the same establishment, it cannot be said that the principle of the Drummond case applies.

"The law of the Pesnell case seems to be more in point, where the substance of the holding was that if an individual's unemployment resulted from a labor dispute, brought on by or participated in by an organization of which such individual was a member, then unemployment benefits could not be collected under the Alabama Unemployment Compensation Act.

\*    \*    \*    \*    \*    \*

"It is interesting to note that the definition of a labor dispute employed in the Alabama Unemployment Compensation Act was taken, verbatim, from the Norris-LaGuardia Act, 29 U.S.C.A. § 113(c), and National Labor Relations Act, 29 U.S.C.A. § 152(9). See Pesnell case, supra.

"It also affords interesting observation—as was commented upon in the Drummond case—that the all embracive and broad definition of a labor dispute in the Federal Act was there employed for the purpose of benefiting the worker and to preserve and encourage the right of collective bargaining.

"So, we have the unusual situation in the Alabama Act of a broad and comprehensive definition of a term used in a remedial statute (the Federal Acts), the design of which was to benefit the worker, wrenched from its original, legislative setting and transposed to another remedial act (the Alabama Unemployment Compensation Act) as a penalty and for the evident purpose of disqualifying the worker under the certain conditions named in the definition in the Alabama Act.

"But, be that as it may, such is the present status of the Alabama statute. And however sympathetic might be our disposition to aid the claimant and whatever may be our personal view as to the propriety of incorporating in the Alabama Act the all inclusive definition, given the term 'labor dispute' in the Federal Acts, it is not here appropriate to consider. The language of the law is plain. The facts are uncon-

troverted. It is but the duty and jurisdiction of the court to rule in accordance with the law, as written. We cannot extend it or give it a beneficent effect which is not there."

On certiorari, the dissenting opinion by the late Chief Justice Gardner was, on rehearing, adopted as the majority view. It was there said:

"We are of the opinion the legislative intent is plainly manifested in the Act here in question wherein the definition of a 'labor dispute' as set forth in the federal statute was adopted as the definition to be followed in cases arising thereunder. And the decisions of the Supreme Court of the United States arising under that federal statute and noted in the majority opinion (New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872) clearly demonstrate that the facts in the instant case constitute a labor dispute, a jurisdictional dispute pure and simple. And when our statute was passed these decisions had been rendered giving such broad meaning to a labor dispute. Statutes of other states are of no interest as our Act stands alone and merely adopts the meaning of a labor dispute found in the federal statute. We consider the legislative intent too clear for further elaboration and that the treatment of this question in the opinion of Judge Simpson of the Court of Appeals suffices for all purposes, *though we do not wish to be considered as committing ourselves to that part of the opinion relating to the Pesnell and Drummond cases cited therein* which were controlled by the Act of 1935 and did not concern the Act of 1939 containing the present definition of a 'labor dispute' and as now found in Tit. 26, § 214, subd. A, Code 1940. Ex parte Pesnell, 240 Ala. 457, 199 So. 726.

"We consider further discussion unnecessary for the reason that, as we view it, and with all due respect to the majority opinion, the opinion of Judge Simpson of the Court of Appeals *fully treats the question of the change in the statute as applicable to this case,* and his views thereon suffice for all purposes here and are expressive of our own conclusions." [Emphasis supplied.]

Next, we have the case of Tennessee Coal, Iron & R. Company v. Martin, 1948, 33 Ala.App. 502, 36 So.2d 535, 536, 541, certiorari denied 251 Ala. 153, 36 So.2d 547, 555, supra. In that case, members of the steel workers' union and the ore miners' union were on strike. Members of the coal miners' union "did not participate in the strike, nor were they responsible in any degree for the strike that directly and effectively prevented the operation of the coal mines and other units of the industry". Martin was a coal miner and made claim for benefits under the Unemployment Compensation Act. It was held by the Court of Appeals that Martin was entitled to benefits since the "labor dispute" causing his unemployment was not in active progress in the *"establishment"* in which he was last employed. Moreover, it was there stated:

"[S]ince the 1939 Amendment to Section 214, subd. A, Title 26, Code of Alabama 1940, defining a 'labor dispute' as the term is defined in National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., it is our opinion that appellees' unemployment was directly due to a labor dispute. Section 214, subd. A supra. Badgett v. Department of Industrial Relations, 30 Ala. App. 457, 10 So.2d 872; [Id.], 243 Ala. 538, 10 So.2d 880; New Negro Alliance v. Sanitary Grocery, 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872.

\* \* \* \* \* \*

"\* \* \* Each case must be particularized on its own facts. This being so it is our further opinion that the coal mines in which the appellees were employed must, under the facts of this

case, be considered as an establishment separate from the establishment or establishments in which a labor dispute was in progress.

"While we disagree with the reasoning of the court below, and the basis of its conclusion, we think its conclusion is correct."

On certiorari, the decision of the Court of Appeals was affirmed but the affirmance was limited to the holding that the "labor dispute" was not "in the establishment" in which Martin was last employed. In this connection, I quote the following from the opinion on certiorari, written by the late Chief Justice Gardner:

"In view of the further holding of the Court of Appeals, however, that this complainant's unemployment was directly due to a labor dispute, it becomes necessary for us to observe that in view of our affirmance of the judgment of the Court of Appeals upon the ground above noted, and upon which that court based its ruling, a discussion and consideration of this question becomes unnecessary and is therefore left to one side.

"Upon the part of the appellee the insistence is that the Drummond case is decisive in their favor and upon that theory the three judge trial court rested its decision. While on the other hand appellant insists that the Drummond case was to be differentiated though it contains dictum supportive of the trial court. Upon this question there may here be a difference of view. Whatever might be said, however, upon that question would itself be dictum, and as a general rule the courts very properly decline to enter into discussions which are not decisive of the case. We merely make these observations to the end that we may not be bound by the holding of the Court of Appeals upon this particular question. It is left here undetermined."

In Gulf Atlantic Warehouse Co. v. Bennett, 1951, 36 Ala.App. 33, 51 So.2d 544, 547, the primary question related to the proper interpretation of the clause " 'directly due to a labor dispute' " as it appears in Section 214, Subd. A, Tit. 26, supra. It was held that where an employer, in apprehension of a walkout, notified customers to that effect, and customers ceased shipments to the warehouse, the resulting unemployment was not "directly due to a labor dispute" within the disqualification provisions of the Unemployment Compensation Act. It is apparent that that decision has no direct bearing on the question now before us.

In Department of Industrial Relations v. Stone, 1951, 36 Ala.App. 16, 53 So.2d 859, 861, it was held that a "labor dispute" did not exist where miners refused to work under changed working conditions "that are practically impossible of fulfillment"; and that "the employees' refusal to accede to an unwarranted demand of the employer would not constitute a labor dispute" within the meaning of Section 214, Subd. A, Tit. 26, supra. It is apparent that that case has no special significance here.

Claimant seems to place principal reliance on the Drummond case, supra, while the Martin case, supra, is said by appellee to support its position. There seems little doubt that expressions in these two cases, already adverted to, have been the source of divergent views as to the meaning of Section 214, Subd. A, supra. But, as I see it, the question now before us is here for the first time for authoritative determination. The statements of this court in the several opinions written by the late Chief Justice Gardner when the Drummond, Badgett and Martin cases were here on certiorari seem sufficient to show that the question now before us was not there being passed on. That brings us, then, to a consideration of the meaning of the statute.

I do not know, of course, nor is there any way of ascertaining, precisely what the members of the legislature had in mind in enacting Section 214, Subd. A, supra. It may be, as argued by claimant, that they "never intended that one, who has purchased his protection against involuntary unemployment, should be denied those benefits because of a 'labor dispute' in which he was in no way involved and the causes

of which unemployment he, his agents or organization were powerless to avert". If such were their intention, it would have been a simple matter to have so provided, as has been done in most of the states. It seems to me that the statute is so plain and unambiguous, when applied to the facts as found here, that there is left no room for construction. It says in clear and unequivocable language that benefits are not payable to an individual when his unemployment is "directly due to a labor dispute in active progress in the establishment in which he is or was last employed". I perceive no basis for adding to that clause, by interpolation, a provision that a claimant, although his unemployment is directly due to a "labor dispute", is nevertheless entitled to benefits if he is "in no way involved" in the "labor dispute". There may be, and unquestionably are, cogent and strongly persuasive reasons why benefits should be payable to one who is in no way involved in the "labor dispute" causing his unemployment. But such reasons, it seems to me, are more properly addressable to the legislature, the policy making branch of our government, than to the courts. As so well stated in the Badgett case, supra [30 Ala.App. 457, 10 So.2d 879] :

"The language of the law is plain. * * * It is but the duty and jurisdiction of the court to rule in accordance with the law, as written. We cannot extend it or give it a beneficent effect which is not there."

It is not within the province of the courts to sit as a sort of super-legislature and question the wisdom of a statute or the policy which it expresses. "Where the language of a statute is plain and unambiguous there is no occasion for construction, and the statute must be given effect according to its plain and obvious meaning." 82 C.J.S. Statutes, § 322b(2), p. 577. As said in State v. Praetorians, 226 Ala. 259, 260, 146 So. 411, 412:

" 'The courts must confine themselves to the construction of the law as it is, and not attempt * * * to supply defective legislation, or otherwise amend or change the law. under. the.

guise of construction.' 59 Corpus Juris 945."

I recognize that the Unemployment Compensation Act is remedial legislation and that the provisions limiting benefits thereunder should, therefore, be strictly construed. Tennessee Coal, Iron & R. Co. v. Martin, supra; Department of Industrial Relations v. Stone, supra. However, as already indicated, it seems to me that the legislative pronouncement there made is so clear that there is no room for a construction, either strict or liberal. That the provisions of a statute should be either liberally or strictly construed does not mean that the court should disregard the plain meaning of the language employed to express the legislative object. I see no escape from the conclusion that benefits are not payable when the employment is directly due to a labor dispute. That is what the Act says and, as I see it, this court cannot say that it means something else without committing trespass on the legislative field. This, the court should refrain from doing.

There may well be, in other cases, questions to arise as to whether the factual situation comes within the term "labor dispute", as defined in the statute, or as to whether the labor dispute causing the unemployment is in the "establishment" where the claimant is or was last employed. But we do not have those problems here. The finding is that claimant's unemployment was directly due to a "labor dispute in active progress in the establishment in which he is or was last employed." That precludes him from benefits under the Act.

In the Drummond case, supra, principal reliance seems to have been placed on the case of Kieckhefer Container Co. v. Unemployment Compensation Commission, 1940, 125 N.J.L. 52, 13 A.2d 646. To show that that decision can be of no weight here, we need only to call attention to a very material distinction between the New Jersey law and the Alabama law. The New Jersey law, R.S.1937, 43:21-5(d), N.J.S.A., expressly provides that a claimant is not disqualified if it is shown that he is not "directly interested in the labor dispute" causing the

stoppage of work. There is no such provision in the Alabama law, although it may be said that the general disqualification clause in the New Jersey and Alabama laws are of similar import; but the similarity stops there. The Alabama law contains *no* exception to the general disqualification provision.

It may be stated that the Alabama statute is perhaps as restrictive as any other law on the subject and more restrictive than most of the laws on the subject. In this connection, attention is directed to several pertinent annotations and law review articles: 28 A.L.R.2d 287; 173 A.L.R. 490; 154 A.L.R. 672; 148 A.L.R. 1309; 135 A.L.R. 920; Unemployment Comp. Comm. v. Aragan, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 143; Frick, Unemployment Compensation—Effect of the Merits of a Labor Dispute on the Right to Benefits, 49 Mich. L.R. 886–896 (1951); Eligibility for Unemployment Benefits of Persons Involuntarily Unemployed Because of Labor Disputes, 49 Columbia L.R. 550–566 (1949); 33 Minn.L.R. 758–770 (1949); Lesser, Labor Disputes and Unemployment Compensation, 55 Yale L.J. 167–181 (1945–46); Fierst and Spector, Unemployment Compensation in Labor Disputes, 49 Yale L.J. 461–491 (1939–40).

A large majority of the states have in most respects copied the labor dispute disqualification clause of the Social Security Board Draft Bill, as follows:

"'Sec. 5. An individual shall be disqualified for benefits—(d) For any week with respect to which the commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed: *Provided,* That this subsection shall not apply if it is shown to the satisfaction of the commissioner that—

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade · or class of workers of which, immediately before commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute:

"*Provided,* That if in any case separate branches of work which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall, for the purpose of this subsection, be deemed to be a separate factory, establishment, or other premises.' "

See 49 Yale L.J. 461 [1939–1940], supra, Note 4, and Appendix, p. 491, for list of states following this bill. See, also, 49 Columbia L.R. 550 (1949), supra, Note 1, for compilation of state statutes disqualifying claimants where unemployment is result of a labor dispute; 33 Minn.L.R. 763.

As an indication of the tendency of most of the states to provide specific exceptions to the disqualifying provisions with respect to unemployment resulting from a labor dispute, reference is made to the following pertinent laws of the four bordering states of Florida, Georgia, Mississippi and Tennessee:

### Florida

"443.06 Disqualification for benefits

An individual shall be disqualified for benefits:

\* \* \* \* \* \*

"(4) For any week with respect to which the commission finds that his total or partial unemployment is due to a labor dispute in active progress which exists at the factory, establishment or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the commission that:

"(a) He is not participating in or financing, or directly interested in the

labor dispute which is in active progress; provided, however, that the payment of regular union dues shall not be construed as financing a labor dispute within the meaning of this section; and

"(b) He does not belong to a grade or class of workers of which immediately before the commencement of the labor dispute there were members employed at the premises at which the labor dispute occurs any of whom are participating in, or financing, or directly interested in the dispute; provided, that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises, or are conducted in separate departments of the same premises, each department shall, for the purpose of this subsection be deemed to be a separate factory, establishment or other premises." Sec. 443.06(4), Fla.Stat. 1951, as amended, F.S.A.

### Georgia

"54-610. Disqualification for benefits.—An individual shall be disqualified for benefits—

\* \* \* \* \* \*

"(d) For any week with respect to which the Commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed: Provided, that this subsection shall not apply if it is shown to the satisfaction of the Commissioner that—

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or direct-

ly interested in the dispute: Provided, that if in any case separate branches of work, which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises: and Provided, further, that when a stoppage of work due to a labor dispute ceases and operations are resumed at the factory, establishment, or other premises at which he is or was last employed, but he has not been restored to such last employment, his disqualification for benefits under this subsection shall be deemed to have ceased at such time as the Commissioner shall determine such stoppage of work to have ceased and such operations to have been resumed." Ga.Code Ann. § 54-610(d).

### Mississippi

As originally enacted in 1936, Gen.Laws Miss. 1936, pp. 279, 284, the provision was as follows:

"Sec. 5. An individual shall be ineligible for benefits:

\* \* \* \* \* \*

"(d) For any week in which it is found by the commission that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed, provided that this section shall not apply if it is shown to the satisfaction of the commission that:

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the

stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; and provided further that if [sic] any case separate branches of work, which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall for the purposes of this subsection be deemed to be a separate factory, establishment or other premises."

This was amended in 1940, Gen.Laws Miss 1940, pp. 494, 498, Miss.Code Ann. 1942, § 7379(e), to read as follows:

"Section 5. An individual shall be disqualified for benefits—

\*   \*   \*   \*   \*   \*

"(d) For any week with respect to which the commission finds that his total unemployment is due to a stoppage of work which exists because of a labor dispute at a factory, establishment, or other premises at which he is or was last employed: Provided, that this subsection shall not apply if it is shown to the satisfaction of the commission—

"(1) He is unemployed due to a stoppage of work occasioned by an unjustified lock-out; provided, however, such lock-out was not occasioned or brought about by such individual acting alone or with other workers in concert; or

"(2) He is not participating in or directly interested in the labor dispute which caused the stoppage of work; and

"(3) He does not belong to a grade or class of workers of which, immediately before the commencement of stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or directly interested in the dispute:

"Provided, that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises."

## Tennessee

As originally enacted in 1936, Public Acts Tenn. 1937, Ex.Sess. 1936, pp. 19, 25, it was provided as follows:

"Sec. 5.   \*   \*   \*   An individual shall be disqualified for benefits—

\*   \*   \*   \*   \*   \*

"(d) For any week with respect to which the Commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided that this subsection shall not apply if it is shown to the satisfaction of the Commissioner that—

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of them are participating in or financing or directly interested in the dispute;

"Provided, That if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises."

This was amended in 1939, Public Acts Tenn.1939, pp. 506, 511; Williams Tenn. Code Ann. § 6901.29E, to read as follows:

"An individual shall be disqualified for benefits—

\*   \*   \*   \*   \*   \*

"'(d) For any week with respect to which the Commissioner finds that his total or partial unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed, provided, that this subsection shall not apply if it is shown to the satisfaction of the Commissioner that—

"'(1) He is not participating in or directly interested in the labor dispute which caused his total or partial unemployment; and

"'(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which the labor dispute occurs, any of whom are participating in or directly interested in the dispute:

"'Provided, That if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises.

"'(3) Provided, however, that in no event shall any disqualification under this subsection extend or be applicable for a period of time in excess of four (4) weeks, with respect to any one (1) labor dispute.'"

To repeat: The Alabama law as now written prohibits the payment of benefits when one's unemployment is "directly due to a labor dispute still in active progress in the establishment in which he is or was last employed". If that clearly expressed State policy is to be changed so as to permit benefits to one who has not participated in any way in the "labor dispute" causing his unemployment, it should be done by legislative action as has been done by our bordering sister states and most of the other states.

My view is that the Court of Appeals has correctly interpreted Section 214, Subd. A, Tit. 26, supra, in its application to the facts of this case, and that its decision should be here affirmed. Therefore, I respectfully dissent.

LIVINGSTON, C. J., and LAWSON, J., concur in the foregoing opinion.