# 428

104 So.2d 327

**UNITED STATES STEEL CORPORATION**

v.

**W. T. GARRIS and Department of Industrial Relations.**

6 Div. 560.

Court of Appeals of Alabama.

March 25, 1958.

Rehearing Denied May 13, 1958.

———◆———

Burr, McKamy, Moore & Thomas, Birmingham, for appellant.

Jenkins & Cole, Birmingham, for appellees.

CATES, Judge,

This case involves unemployment insurance for unemployment of Mr. Garris, a locomotive engineer, during the period of a strike by the company's railroad conductors at the T. C. I. Division of appellant July 29–August 12, 1955.

The employer's brief sets forth the facts as follows:

"This statement can best be presented by quoting from stipulation read into the record (T. 87–88) as follows:

"'Mr. Burr: It is stipulated and agreed between the parties and their attorneys of record that the facts as they pertain to the claim of W. T. Garris, case No. 36517–X, are as follows:

"'That W. T. Garris was employed by the Tennessee Coal & Iron Division of United States Steel Corporation in the Rail Transportation Department as a railroad engineer at the time of the strike made the basis of this suit.

"'Mr. Garris, the claimant, was a member of the Brotherhood of Locomotive Firemen and Enginemen, Local No. 596. Local No. 596 was at the time of the strike and is a local of the Brotherhood, a national labor union unaffiliated with any other labor organization. It is not connected with or associated with the United Steelworkers Local No. 3662, United Steelworkers of America or affiliated with the United Steelworkers of America. Local 596 was the certified bargaining agent of the firemen and enginemen of said Rail Transportation Department. Local 596 of the Brotherhood at the time of said strike had a contract with T. C. I. under which it was peaceably working. There was no controversy at the time between T. C. I. and Mr. Garris or his union with respect to wages, hours or any other term or conditions of employment. There was no labor dispute or controversy between any other union and Mr.

Garris or his local. There was no labor dispute between the T. C. I. and claimant Garris or the Brotherhood.

" 'Neither Mr. Garris nor the members of Local 596, of the Brotherhood nor their agents or representatives instigated or called the strike and took no part in the strike nor did they participate in the strike in any manner. Neither Mr. Garris nor the members of Local 596 or their agents or representatives stood to gain or in any manner did gain from the strike.

" 'At the inception of and during the strike, Mr. Garris was ready, willing and able to work at his job as an engineer in the Rail Transportation Department of T. C. I. During said time there was no work available. The claimant, Mr. Garris, remained on his job when the strike was called until there was no further work available for him during the duration of the strike. There were picket lines lasting throughout the strike at the entrance to the plant.

" 'At the conclusion of the strike, operations were resumed and the men including Claimant Garris returned to work.

" 'It is further agreed that the Court shall consider all other evidence introduced at the hearing in the consolidated trial of this cause which may be material to the claim of W. T. Garris.'

"The strike was called July 29, 1955 and was terminated August 12, 1955.

"While, as stated in the stipulation quoted above, there were picket lines lasting throughout the strike, yet there was no evidence of threats or violence. The witness Mr. Goodwin, President of the Local United Steelworkers of America at the Sheet Mill, testified, in answer to questions, as follows:

" 'Q. Was the 1955 strike a peaceful strike? A. Generally it was. We had some rhubarbs but it was generally peaceful.

" 'Q. And you so testified before the Board of Appeals? A. Yes, sir.' (T. 187)

"(The record before the Court is somewhat voluminous. This was occasioned by the fact that some few companion cases growing out of the same strike were being tried jointly with the present case. It is submitted, however, that insofar as this, the W. T. Garris appeal, is concerned, the stipulation read into the record and the further bit of testimony by high Union officials that the strike was peaceful is all that is of pertinence to this appeal.)"

Garris, in brief, states:

"The statement of facts contained in the appellant's brief is correct, except in that there was testimony in the court below of threats and violence, and potential violence. These appear in the transcript.

"It should be noted that witness Eleanor B. Armstrong was told by the pickets at the gate that she could not go into the plant to work. (Tr. 120) W. V. McCullar, another witness, upon seeing the pickets and being 'turned—around' by them, testified:

" 'I am never going to buck three men at the same time. (Tr. 125)

"Richard E. Smith, another witness, testified:

" 'Q. Did you see any violence or intimidation or anything of that kind in the picket line? A. I saw it get pretty rough at times.'

"E. L. Chaney testified as follows:

" 'Q. Would you cross a peaceful picket line maintained by the United Steelworkers? A. Yes, sir, if there was no danger in getting hurt afterwards, but as you know we have always

heard there is such a thing as afterwards getting your family hurt or your house blown up or something like that and I don't go for that.

"'Q. Did you see any violence there at the time? A. No, not when I was there.' (Tr. 167)

"Fred P. Maples, another witness, also testified as follows:

"'Q. But you went and arranged to get their permission? A. We don't want to get anybody hurt and we don't want—there is no doubt in my mind we would have gotten somebody hurt if we had bulldogged our people in.' (Tr. 177)

"The testimony of J. M. Spearman, who at the time of the strike was Vice-President in Charge of Operations of the Tennessee Coal and Iron Division of the United States Steel Corporation, is as follows:

"'Q. (Cross Examination By Mr. Cole): Is it not true that it has been the policy of T. C. I. for over 15 years not to continue its operations when strikes of this nature occur? A. I wouldn't say that is 100 per cent so. It is generally so but there are certain mills that would operate under certain conditions but not always.

"'Q. In other words, am I correct in saying generally speaking the company will not attempt to continue the operations when a strike is in progress? A. I will say generally speaking, depending on the production in the mills.' (Tr. 45–46)"

Garris comes under the "innocent bystander" rule of the Usher case (Usher v. Department of Industrial Relations, 261 Ala. 509, 75 So.2d 165) which we have today treated in United States Steel Corp. v. Wood, Ala.App., —— So.2d ——.

The judgment below is

Affirmed.