236 So.2d 352

Richard L. HOLMES, Director, Department of Industrial Relations, State of Alabama, and Pullman·Inc.,

v.

Haney COOK.

6 Div. 6.

Court of Civil Appeals of Alabama.

May 20, 1970.

J. Eugene Foster, Montgomery, General Counsel Dept. of Industrial Relations, James R. Solomon, Jr., Abbeville, Asst. Gen. Counsel, Dept. of Industrial Relations, for appellants.

Huey, Stone & Patton, Bessemer, for Pullman Inc.

**690**

Lipscomb & Lipscomb, Bessemer, for appellee.

WRIGHT, Judge.

Appellee, Haney R. Cook, was a supervisory employee of appellant, Pullman incorporated. He had been an employee for many years and on July 3, 1966, at age 65, retired under a compulsory retirement rule of the company. For several years, prior to retirement, appellee had been a participant in a voluntary retirement plan made available by the Pullman Corporation to its employees. The contributions made by employee and employer under the "Plan" were used to purchase an annuity contract from Prudential Life Insurance Company. It was stipulated that there had been paid into

the Plan the sum of $42,478.18, of which amount the employee had contributed $6,039.13, and Pullman Corporation had contributed $36,439.05. Upon retirement, appellee began to receive payments under the "Plan" in the amount of $228.51 per month. First payment was made August 1, 1966.

The "Plan" in its entirety was made a part of the record.

Mr. Cook, upon retirement, signed for benefits under the Unemployment Compensation Law of Alabama (Title 26, Chapter 4, Code of Alabama Recompiled 1958). After denial of benefits by the State Department of Industrial Relations, upon the basis of disqualification under the provisions of Title 26, Section 214, subd. H, Cook appealed to the Circuit Court of Jefferson County, Bessemer Division. The case was tried de novo under stipulation of facts, with Pullman Corporation, by agreement, being made a party defendant. It was stipulated that benefits, if judgment favored claimant, would be in the amount of $300. Judgment in favor of claimant was rendered by the court on November 12, 1968. An appeal was taken from the judgment by appellants, Richard L. Holmes, as Director of the Department of Industrial Relations and Pullman Incorporated, to this Court.

Since the facts were stipulated and are undisputed, the sole question presented on this appeal is whether appellee, an involuntary retired employee of Pullman Incorporated, otherwise fully eligible for benefits under the provisions of the Unemployment Compensation Law, is disqualified from receiving such benefits under the provisions of Title 26, Section 214, subd. H, because he received the sum of $228.51 monthly under a voluntary retirement plan made available by Pullman Incorporated, and jointly contributed to by employee and employer.

Title 26, Section 214, subd. H reads as follows:

"H. For any week with respect to which or a part of which he has received or is

seeking a pension payment pursuant to an employment contract or agreement, provided that if it is finally determined he is not entitled to such pension payment of this disqualification shall not apply; and provided further, that no claimant shall be disqualified from receiving benefits by virtue of the provisions of this subsection when his benefits are based entirely on wages earned from employment other than that from which he retired. If the retirement pay, the receipt of which is disqualifying under this subsection, is less than the weekly benefit which would otherwise be due under this chapter, he shall be entitled to receive, if otherwise eligible, weekly benefits reduced by the amount of such retirement pay."

The trial court in its written opinion based its determination that appellee was entitled to benefits on the premise that the payments under the "Plan" to appellee were not disqualifying under the provisions of Section 214, subd. H because such payments were not pursuant to an employment contract or agreement. It appears the determination of the court was based upon the provisions of the "Plan" in Paragraph 14.1 thereof, which stated as follows:

"14.1 No Enlargement of Employee Rights—

"This Plan is strictly a voluntary undertaking on the part of each Participating Company and shall not be deemed to constitute a contract between any Participating Company and any Employee, or to be consideration for, or an inducement to, or a condition of, the employment of any Employee. Nothing contained in the Plan shall be deemed to give any Employee the right to be retained in the service of any Participating Company or to interfere with the right of any Participating Company to discharge or retire any Employee at any time * * *"

The question presented by the factual situation and the interpretation of the legislative intent in the enactment of Section 214, subd. H, is apparently of first impression in this State. There have been cases in other states, with somewhat similar facts, and statutes, which we shall examine in the course of this opinion.

■ We begin our consideration with two principles in mind which have been long and often enunciated by the appellate courts of this and other states. The first principle is the Unemployment Compensation Act is remedial in character, and its beneficent purpose should be liberally construed, and its provisions of disqualification from benefits should be narrowly construed. Department of Industrial Relations v. Stone, 36 Ala.App. 16, 53 So.2d 859.

■ The second principle is that in construing a statute, it is our duty to find the intent of the legislature if there is ambiguity in the words of the statute. In finding such intent, we will look to the entire act in the light of the evident purposes of its enactment. Department of Industrial Relations v. Stone, supra; Akers v. State ex rel. Witcher, 283 Ala. 248, 215 So.2d 578; Standard Dredging Corp. v. State, 271 Ala. 22, 122 So.2d 280.

From our study of the respective positions of the parties to this case, it appears there are some areas of agreement as to the meaning of Section 214, subd. H. It is contended by appellants and conceded by appellee, that the word "pension" as found in the statute does not have the narrow meaning commonly given. That is, the meaning is not confined to a gratuity, wholly given or financed by an employer. It is not a mere bounty springing from the appreciation and graciousness of an employer. It may be these, but in modern or recent terminology, it has been used broadly in the sense of retirement pay or an annuity. Such retirement or annuity may be wholly financed by the employer on may have been contributed to by the employee.

In the leading cases from other jurisdictions, such pensions or retirement payments, when paid fully, or substantially contributed to by the employer, have been held to be compensation for loss of wages or a substitution for wages lost by reason of the employee's loss of his job. Kneeland v. Administrator, Unemployment Comp. Act, 138 Conn. 630, 88 A.2d 376, 32 A.L.R.2d 896; Barclay v. Administrator, Unemployment Comp. Act, 139 Conn. 569, 95 A.2d 797.

■ In light of the apparent agreement of the parties and the authority of the above cited cases, we conclude that the word "pension" as it appears in Section 214, subd. H imports within its meaning, retirement pay or annuity.

The major point of disagreement as to the interpretation or intent of the statute appears to be the meaning of the following words " * * * pursuant to an employment contract or agreement * * *."

Appellants contend the meaning of the above quotation is not limited to contracts for hire, but means a contract, agreement, or understanding between employer and employee which arises out of or is placed in effect because of the employer-employee relationship.

Appellee takes the position that even should such construction be placed on the statute, it would not apply to his claim. It is his argument that (1) The "Plan" is not a contract between him and Pullman Incorporated, for Paragraph 14.1 thereof specifically says that it is not. (2) The money paid to appellee as pension or retirement pay under the "Plan" is in reality only a refund or repayment of the amount he contributed thereto until such amount is exhausted.

As stated in the beginning, in order to construe the meaning of a statute, we must look to the intent and purpose of its enactment and to the evils it intended to correct. Alabama was among the first states to adopt an Unemployment Compensation statute. The enactment of the Federal Social Security Act made such a state law possible and feasible. It was in implementation of the Social Security Act that our statute was passed by the legislature in 1935. One of the most often cited cases in the fields of taxation, police power and general constitutional law is the Alabama case of Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516, decided by our Supreme Court in 1937. This case held the Alabama law constitutional even before the constitutionality of the Federal Social Security Act was determined. It was from cases begun in Alabama that the Supreme Court of the United States first held the Federal Social Security Act constitutional in May of 1937. Chas. C. Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293.

The purposes of the law were clearly set out in the case of Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327, another case arising in Alabama. The Social Security Act and its implementation by state unemployment compensation laws was enacted in the midst of a deep depression when the evil results of unemployment were only too evident. The Congress and most state legislatures were determined that the tragic and economic social effect of sudden and prolonged periods of unemployment would be remedied so far as possible. It was stated in Carmichael v. Southern Coal & Coke Co., supra, that "among the benefits sought by relief is the avoidance of destitution, and of the gathering clouds of evils which beset the worker, his family and the community after wages cease and before destitution begins."

The design of the unemployment compensation law is to provide a worker with funds to avoid a period of destitution after having involuntarily lost his employment and thus his income. It aids in sustaining him while he looks for other employment. It provides for limitation in time and amount. It is not a gratuity. It is not insurance, but to those coming within its

coverage is in the nature of insurance. Department of Ind. Rel. v. Stone, supra; Tenn. Coal, Iron & R. Co. v. Martin, 33 Ala.App. 502, 36 So.2d 535.

The act establishes specific eligibility conditions. It further provides specific grounds for disqualification though an employee may have otherwise been eligible. The disqualifications are designed to encourage or require the worker to remain employed and not become unemployed voluntarily, without good cause connected with his job. They require him to avoid acts of misconduct, dishonesty and criminality while on the job. If he becomes unemployed through no fault of his own he is required and encouraged to immediately seek and be available for other employment.

The act also encourages the employer to make every effort to provide and maintain steady and regular employment for his workers. Such encouragement is provided by tax credit for contributions to the funds, and through penalty of increase in contributions to the fund, based on a formula which includes a factor for employees drawing benefits.

The rights to benefits and disqualifications therefrom are based directly on employer-employee relationships. If a worker, though unemployed involuntarily, is provided with wages or a substitute therefor, up to amount of benefits provided by unemployment compensation, fully or substantially through contributions by his employer and because of or arising out of, the prior existing employer-employee relationship, the purposes of the statute are fulfilled. The worker is not thrown destitute and without means of support into the economic maelstrom. The social evil the statute was designed to ease and remedy is not present. The employer has fulfilled his responsibility to the worker and society.

There is no question that disqualification under Section 214, subd. H due to receipt of a pension or retirement payment is dependent upon such pension or retirement payment being paid by his last employer. The section makes clear that if a claimant, even though receiving pension or retirement pay from a past employer, has subsequently qualified for benefits from employment other than that from which he retired, the disqualification does not apply. It is further provided that the pension or retirement pay must be in equal or greater amount than the weekly benefits that would otherwise be due.

It is appellee's contention that because the "Plan" specifically states that it is strictly a voluntary undertaking and "shall not be deemed to constitute a contract between any participating company and any employee * * *," the pension paid to appellee is not a "pension payment pursuant to an employment contract or agreement," under Section 214, subd. H and not disqualifying. We are of the opinion that appellee and the trial court placed an incorrect interpretation on this clause. It is obvious from the heading of Section 14.1 of the "Plan" that this was an effort by the company to preclude employees from contending that the plan gave them a vested interest in their employment, and that the company would be required to provide them with the benefits of or right to participate in the "Plan." There surely can be no serious contention that a participating employee has no right to enforce the obligations and benefits of the "Plan" by action on the contract. The "Plan" insofar as the mutual obligations and benefits are concerned fulfills all the requirements of a binding and valid contract and, in our opinion, it is enforceable as such. Assuming appellee's contention that the statement of Section 14.1 bears the meaning he gives it, it does not, of itself, preclude the existence of a contract. If the required elements for a contract exist in fact, saying therein that it is not a contract, is not conclusive. The pension of appellee is paid pursuant to a contract, or agreement or "Plan" provided and entered into as a result of his employment and is within the intent and meaning of Section

214, subd. H. A literal construction of the words of a statute is not to be permitted to defeat the spirit of the act. Ex parte Wilson, 269 Ala. 263, 112 So.2d 443; Bell v. Pritchard, 273 Ala. 289, 139 So.2d 596; Hamrick v. Thompson, 276 Ala. 605, 165 So.2d 386.

There have been cases in other states which have involved similar disqualifying provisions. The case of Kneeland v. Administrator, Unemployment Com. Act, et al., supra, a Connecticut case previously cited, involved the question of disqualification for benefits of an involuntary retired employee receiving a pension from his last employer. This disqualifying section of the act reads in part as follows:

"An individual shall be ineligible for benefits—

"(4) During any week with respect to which the individual has received or is about to receive remuneration in the form of (a) wages in lieu of notice or dismissal payments or any payment by way of compensation for loss of wages, * * * "

The court held that a pension was a substitute for the wages lost by the employee by reason of the loss of his job and was payment made "by way of compensation for loss of wages."

The decision in the Kneeland case is closely allied with the matter here. It involved a pension or retirement pay and the section construed is very similar to our Section 214, subd. H as it read in our original act and until amended to its present wording in 1955.

 Section 214, subd. H in the 1940 Code of Alabama read as follows in pertinent part:

"For any week with respect to which he has received or is receiving any payment by way of compensation for the loss of wages through an employee pension plan, * * * "

We do not know the legislative history or the reason for the 1955 amendment to Section 214, subd. H. It would be our surmise that it was reworded to more nearly conform to the wording of contracts and agreements negotiated by unions representing the interest of the employees. It is common knowledge that the negotiating of contracts involving pension and retirement plans by unions and employers is an integral part of present collective bargaining. In any event, the change in wording does not, in our opinion, change the intent and purpose of the section. To restate, that intent is to disqualify an individual from receiving the unemployment compensation to which he would have otherwise been entitled, when he is receiving a pension paid, or largely provided, by the employer from whose employment his right to benefits was derived.

Barclay v. Administrator, Unemployment Com. Act, et al., supra, another Connecticut case, supports the Kneeland case and is more analogous to our case in that there was involved a pension to which the employee had contributed. The decision was that contributions by the employee to the fund from which the pension was paid, did not matter when it is shown that the pension payments represented considerably more than the amount contributed by the employee. Such payments were substantially compensation paid by the employer for loss of wages due to involuntary retirement.

The case of Yeager v. Unemployment Com. Board of Review, 196 Pa.Super. 162, 173 A.2d 802, is in point with the instant case in two respects. The Pennsylvania statute, though worded differently, we think more clearly enunciates the disqualification and legislative intent than does Section 214, subd. H of our act. The Pennsylvania statute reads in pertinent part as follows:

"Notwithstanding any other provisions of this section, each eligible employee who is unemployed with respect to any week * * * shall be paid with re-

spect to such week compensation in an amount equal to his weekly benefit rate less the total of * * * (2) that part of a retirement pension or annuity, if any, received by him under a private pension plan to which a base-year employer of such employee has contributed which is in excess of the maximum weekly benefit rate provided for in this act * * *"

This statute clearly indicates that it is the purpose of the Unemployment Compensation Act that an employer shall compensate for loss of wages of an employee who has lost his job through no fault of his own, either by providing a pension or retirement pay equal to or in excess of benefits due because of his employment, or that he receive benefits under the Compensation Act. The employee cannot receive both. The remedial and beneficent purpose of the act is fulfilled by either.

The second aspect of the Yeager case answers a point of contention of appellee here.

It was the argument of claimant that the pension received was a refund of his own contributions until such contributions were repaid in full. This contention is allegedly supported by the fact that the amount paid to appellee under the "Plan" is exempt from income tax for the first three years, or until the amount paid shall equal or exceed the amount contributed by him. This tax exemption is made possible by Title 26, Section 72(d), U.S.C.A., if the pension plan is set up in accordance with Title 26, Section 401, U.S.C.A. The "Plan" in this case was so established.

The court in the *Yeager* case held that the argument that payments made to claimant until they equaled his contributions, were not pension payments, was not tenable, and such payments were not a return of his own funds, and that Section 72(d) of the Internal Revenue Code did not so provide. The case of Salzstein v. Unemployment Compensation Board of Review, 207 Pa.Super. 214, 217 A.2d 786, is in ac-

cord with the holding of the "Yeager" case, as in Funovits v. Unemployment Compensation Board of Review, 207 Pa. Super. 760, 217 A.2d 777.

The contributions of appellee were not exempt from taxation at the time they were made. Since appellee had paid income tax on that amount, there was an exemption granted under Section 72(d) on an equal amount of payments made to him under the annuity plan. Such exemption does not state nor imply that his same funds are being returned to him. It is obvious that the amount of the monthly payments made to appellee were substantially enlarged because of the contributions made by the Pullman Company to the purchase of the annuity. Appellee's contribution alone would have purchased, if at all, a more than proportionately smaller annuity payment.

We are impressed by appellants' argument that if the intent of the legislature in the enactment of Title 26, Section 214, subd. H was other than as we have herein decided, the effect would be to discourage the providing of pension or retirement plans by an employer. If, after providing for payment of a pension at retirement, exceeding in amount benefits under the unemployment compensation law earned by the employee while employed by him, and to which he had also contributed, an employer was further penalized by increased contributions due to payment of unemployment benefits to the same retired employee, such employer would be disinclined to provide such pensions or retirement pay. The employer who was not so generous as to provide for retirement of his employees would thus incur the expense of contributing only to the unemployment compensation fund. We agree that such was not the intent of the legislature.

To summarize—After considering the remedial and beneficent purposes of the Federal Social Security Act and the implementing and cooperative unemployment compensation law enacted by the legislature of Alabama; and in particular Section

214, subd. H thereof, the pension or retirement pay received by appellee arose out of and is pursuant to the employer-employee relation and is a payment made or substantially provided, by his employer. It is a payment made to compensate the appellee for his loss of employment and wages by his forced retirement. Since his employer has provided funds equal to or in excess of the benefits to which he would have been entitled under the Unemployment Compensation Law, appellee is disqualified from receiving such benefits so long as he receives the pension, or until such time as he qualifies for benefits from other employment and another employer.

The judgment of the court below is reversed.

Reversed and remanded.