(No. 48263.-

JOHN W. BENEKOS, Appellee, v. PATRICK W. CLEARY
*et al.,* Appellants.

*Opinion filed November 24, 1976.*

William J. Scott, Attorney General, of Chicago
(Stephen R. Swofford and Paul J. Bargiel, Assistant
Attorneys General, of counsel), for appellants.

John W. Benekos, of Chicago, *pro se.*

MR. JUSTICE CREBS delivered the opinion of the
court:

This case involves the manner in which Federal
retirement benefits are to be considered in calculating

"disqualifying income" pursuant to section 611 of the Unemployment Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 441).

The plaintiff, John W. Benekos, voluntarily retired as an employee of the United States government on June 30, 1972. One week later, on July 7, 1972, the plaintiff filed a claim for unemployment benefits with the local office of the Division of Unemployment Compensation, Bureau of Employment Security, Illinois Department of Labor. In his claim, the plaintiff requested payment of benefits retroactive to July 2, 1972, based upon wages paid him during the base period ending December 31, 1971.

A claims deputy investigated the claim and determined that the plaintiff was ineligible for compensation. The basis for this determination was that "one half of the weekly amount of [the plaintiff's] retirement pension" constituted "disqualifying income" which exceeded the amount of benefits to which the plaintiff would otherwise be entitled. The plaintiff then filed a notice of appeal, seeking review of the deputy's determination by a hearing referee.

A hearing was held on August 31, 1972. Approximately one week later, on September 8, 1972, the referee handed down a decision affirming the determination of the claims deputy and denying the plaintiff benefits from July 2, 1972, through August 12, 1972, the period within the referee's jurisdiction. On appeal, the Department's Board of Review upheld the decision of the referee.

The plaintiff subsequently brought an action in the circuit court of Cook County to obtain administrative review of the Board's decision. The circuit court reversed the decision of the Board, ruling that the Board's decision was against the manifest weight of the evidence. The court further held that section 611(A)(2) of the Unemployment Compensation Act did not apply to the facts of this case. On appeal, the appellate court affirmed. (*Benekos v. Cleary*, 35 Ill. App. 3d 68.) We have granted the

defendants leave to appeal from the judgment of the appellate court.

The relevant statutory provision is section 611 of the Unemployment Compensation Act, which reads as follows:

> "A. For the purposes of this Section 'disqualifying income' means:
>
> 1. The entire amount which an individual has received or will receive with respect to a week in the form of a retirement payment (a) from an employing unit for which he performed services and which pays all of the cost of such retirement payment, or (b) from a trust, annuity or insurance fund or under an annuity or insurance contract, to or under which an employing unit for which he performed services pays or has paid all of the premiums or contributions; and
>
> 2. One-half the amount which an individual has received or will receive with respect to a week in the form of a retirement payment (a) from an employing unit for which he performed services and which pays some, but not all, of the cost of such retirement payment, or (b) from a trust, annuity or insurance fund or under an annuity or insurance contract, to or under which an employing unit for which he performed services pays or has paid some, but not all, of the premiums or contributions.
>
> \* \* \*
>
> C. An individual shall be ineligible for benefits for any week with respect to which his disqualifying income equals or exceeds his weekly benefit amount. If such disqualifying income with respect to a week totals less than the benefits for which he would otherwise be eligible under this Act, he shall be paid, with respect to such week, benefits reduced by the amount of such disqualifying income." (Ill. Rev. Stat. 1971, ch. 48, par. 441.)

In ruling against plaintiff's claim for unemployment benefits, the hearing referee made express reference only to section 611(A)(2)(a). Apparently applying that subsection, the referee found that one-half of the plaintiff's weekly retirement pay, or $69 per week, must be considered disqualifying income. Since the plaintiff was

otherwise eligible to receive only $51, it followed that he "was ineligible for benefits." The Board of Review affirmed the decision of the referee without referring to either subsection of section 611(A)(2). Therefore, although the defendants urge in the alternative that plaintiff's claim is barred through operation of section 611(A)(2)(b), we focus at the outset upon the applicability of section 611(A)(2)(a).

The plaintiff's position has consistently been that his initial retirement payments are solely a return of his own contributions. Accordingly, the plaintiff argues that his employer has not paid "some, but not all, of the cost" of such payments within the meaning of section 611(A)(2)(a). Accepting this argument, the appellate court stated:

"As we can see, the Illinois statute does not contain any language which refers to an individual who receives a pension under a employer-contributed *plan*. Rather, section 611 apparently looks to who pays the cost of *each weekly payment*. On its face, therefore, the Illinois statute is not applicable to the facts at bar. The evidence shows that the cost of *each* initial retirement payment received by plaintiff was borne by him alone from his individual retirement account. As long as plaintiff is receiving payments from this account, and is otherwise eligible for unemployment compensation benefits, section 611 would be inapplicable. When the funds in his individual account are depleted, of course, section 611(A)(1) would apply because his employer would be paying the entire cost of such retirement payment deemed to be paid each week." (35 Ill. App. 3d 68, 73.)

Continuing, the appellate court declared that "[a]lthough defendant argues that the pension plan should be considered as a whole, we believe that the Illinois statute reflects

an intention that the source of each retirement payment should be considered for purposes of disqualification from unemployment compensation benefits." 35 Ill. App. 3d 68, 73.

Initially, we note that whereas the appellate court characterized section 611 as generally reflecting an intent that the source of each weekly payment be ascertained, the language contained in sections 611(A)(1)(b) and 611(A)(2)(b) does not appear so restrictive. Nevertheless, assuming that section 611(A)(2)(a) mandates an inquiry as to the source of each weekly payment, we must then review the evidence which the plaintiff has produced in support of his claim that his initial payments are solely a return of his own contributions.

At the hearing before the referee, the plaintiff testified that he had voluntarily retired from government service on June 30, 1972, in order to "seek other employment and obtain the benefit of [an] annuity increase of 4.8% which was available to [him] on July 1st." The plaintiff stated that he had received one $600 retirement payment for July and that he expected his payments to total approximately $645 per month, after final adjustment. In support of his argument that his initial retirement payments would be solely a return of his own contributions, the plaintiff asserted that his contributions were "kept in a separate fund." In contrast, his employer's contributions were paid "only into a general fund." Consequently, while the sums paid by his employer were "not identifiable," his own contributions were "segregated, identifiable and reimbursable in total." Upon the plaintiff's death, any contributions not previously refunded would be returnable in a lump sum to a designated beneficiary.

Upon questioning by the referee, the plaintiff reiterated that his employer's contributions had been paid into a "General Fund," whereas his own contributions had been held in escrow. Asked where he had obtained that

information, the plaintiff produced a booklet entitled "Questions and Answers Concerning the Federal Civil Service Retirement Law." The plaintiff then read excerpts from that booklet, as follows:

> "I'm quoting some pertinent areas of Questions and Answers that I have underscored relevant to this case. 'What happens to money left in the Retirement Fund if death occurs?' Answer: 'The money will be refunded as a lump sum death benefit.' Question: 'May the Employing Agencies retirement contributions be refunded?' Answer: 'No. The Agencies contributions are to the Retirement Fund in general and are not credited to any individual employee.' "

The plaintiff then pointed out that his contributions would be exhausted in two to three years and that, during this period, his retirement payments would not be taxable as income by the Federal government. The plaintiff concluded by again emphasizing that his contributions had been paid into one fund, returnable to himself or his beneficiary, whereas "the government [as his employer] has a separate fund which becomes operative as part of the Retirement System only after the wage contributions on which Federal Income-Tax have been paid, have been totally withdrawn by the annuitant."

No further evidence was introduced before either the referee or the Board. It is apparent, therefore, that the plaintiff's "return of contribution" theory rests chiefly, although not exclusively, upon the plaintiff's supposition that his contributions went into a fund separate and apart from that provided for his employer's contributions. However, the only evidence adduced in support of the plaintiff's supposition was an informational booklet relating to operation of the Federal Civil Service Retirement System. Rather than demonstrating the existence of two separate funds, that booklet, as excerpted in the record, refers only to the existence of one "Retirement Fund."

More importantly, a review of the relevant provisions of the United States Code conclusively establishes that

Federal employee contributions are not placed in a separate fund. Where a Federal employee is included in the Federal Civil Service Retirement System, a percentage of his basic pay is deducted and, together with an equal amount derived from the appropriation or fund used to pay his salary, is deposited in the United States Treasury. (5 U.S.C. sec. 8334(a) (1970).) Additional amounts may be deposited by the employee himself. (5 U.S.C. sec. 8334(c), (d) (1970).) Amounts deducted from the employee's basic pay or deposited by the employee are "entered on individual retirement records." (5 U.S.C. sec. 8334(f) (1970).) However, all such sums, including employer contributions, are to be deposited in the Treasury to the credit of the "Civil Service Retirement and Disability Fund" (hereinafter the Fund). 5 U.S.C. secs. 8331(5), 8334(a) (1970).

The Fund is designated as a trust fund, with moneys accruing to the Fund to be "disbursed in compliance with the terms of the trust." (31 U.S.C. sec. 725s(a), (c)(6) (1970).) The Secretary of the Treasury is authorized to accept and credit to the Fund "money received in the form of a donation, gift, legacy, or bequest, or otherwise contributed for the benefit of civil-service employees generally." (5 U.S.C. sec. 8348(b) (1970).) The Fund is then to be "appropriated for payment of," *inter alia,* "benefits as provided by this subchapter." (5 U.S.C. sec. 8348(a)1(A) (1970).) Lastly, the Secretary is directed to "immediately invest, in interest-bearing securities of the United States such currently available portions of the Fund as are not immediately required for payments from the Fund." 5 U.S.C. sec. 8348(c) (1970).

In light of the foregoing, it is both inaccurate and misleading for the plaintiff to assert that his employer's contributions were directed into a separate "General Fund" which is not drawn upon unless and until his own contributions are exhausted through payment of initial

retirement benefits. While Congress has provided for entry of employee deductions and deposits upon "individual retirement records" (5 U.S.C. sec. 8334(f) (1970)), we find no indication that this requirement was intended to serve anything more than a bookkeeping function. In fact, a provision of the Federal Personnel Manual which the plaintiff cites in his brief states that an individual retirement record is maintained for each employee and "used by the Civil Service Commission as the basic record for adjudicating the retirement rights of a separated employee or his survivors." Federal Personnel Manual Supplement 831, subchapter S22—1.

The plaintiff also relies upon the fact that he is entitled to a lump sum death benefit to the extent of any unrecovered contribution. (5 U.S.C. sec. 8342 (1970).) As the defendants point out, this is a not uncommon feature of annuity plans. While the plaintiff is granted the right to claim, through his beneficiary, death benefits in an amount equivalent to the sum of his contributions less payments already received, this does not necessarily mean that his initial retirement payments are a refund of contributions previously paid. This is particularly true where, as here, the plaintiff's contributions are not segregated in a separate fund.

During his testimony before the referee, the plaintiff argued that his "return of contribution" theory is further supported by the fact that his initial retirement payments are not considered taxable income by the Federal government to the extent of his contributions to the system. (26 U.S.C. sec. 72(d) (1970).) However, the plaintiff has not raised this argument before this court. Moreover, we note that reviewing courts in other jurisdictions have had occasion to consider the effect of section 72 of the Internal Revenue Code upon an employee's right to simultaneously receive retirement benefits and unemployment compensation. Those courts have uniformly held

that the conditional exclusion permitted by section 72(d) (see 26 U.S.C. sec. 72(b), (d) (1970)) is not to be regarded as evidence that the employee's initial payments are solely a return of his own contributions. *Caughey v. Employment Security Department* (1972), 81 Wash. 2d 597, 503 P.2d 460; *Rogers v. District Unemployment Compensation Board* (D.C. App. 1972), 290 A.2d 586; *Holmes v. Cook* (1970), 45 Ala. App. 688, 236 So. 2d 352; *Yeager v. Unemployment Compensation Board of Review* (1961), 196 Pa. Super. 162, 173 A.2d 802; see also *Coleman v. Department of Employment Security Board of Review* (1973), 29 Utah 2d 326, 509 P.2d 355.

It must be recalled that section 611(A)(2)(a) looks to whether the employer has paid some, but not all, of the *cost* of the employee's retirement payments. The plaintiff concedes, of course, that his employer has paid "some, but not all" of the cost of the retirement plan in which he now participates. Accordingly, it may be argued that said employer has, by extension, paid "some, but not all" of the *cost* of *each* retirement payment, and this irrespective of the source of any particular payment. However, we need not pursue this question, since the plaintiff has failed in any event to prove that his contributions were the source of the payments at issue.

The judgments of the appellate and circuit courts are reversed.

*Judgments reversed.*