Bobby C. Millican, Alvin R. Biddle, and Jack Anderson (hereinafter referred to collectively as "the plaintiffs") are former employees of Scottsboro Aluminum, LLC. They each filed a claim for unemployment-compensation benefits; their claims were denied by the local claims examiner and a compensation referee. The plaintiffs unsuccessfully appealed the referee's denial of their claims to the board of appeals for the State Department of Industrial Relations ("the Department"). Each of the plaintiffs then sought relief in the circuit court, which entered summary judgments in favor of the Department and its director, Alice McKinney. The plaintiffs filed separate appeals, which were consolidated.
The dispositive issue is whether the benefits plan from which the plaintiffs received pension benefits was "maintained" by Scottsboro Aluminum, thereby disqualifying the plaintiffs from receiving unemployment compensation under § 25-4-78, Ala. Code 1975; that Code section provides, in pertinent part:
"An individual shall be disqualified for total or partial unemployment:
". . . .
 "(8) Receipt of Pension Payment. For any week with respect to which, or a part of which, an individual has received or has, except for the determination of an exact or specific amount, been determined eligible to receive (during a period for which benefits are being claimed) governmental or other pension, retirement or retired pay, annuity, or similar periodic payment which is based on the previous work of the individual; except, that
". . . .
 "b. For weeks of unemployment which begin on or after April 26, 1982, the amount of any benefits payable to an individual for any such week which begins in a period with respect to which the disqualifying provisions of this subdivision apply, shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity or other payment, which is reasonably attributable to such week, provided, however, such reduction required hereby shall apply to any pension, retirement or retired pay, annuity, or other similar payment only if:
 "1. Such payment is made under a plan maintained (or contributed to) by a base period employer, and
 "2. In the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 (or the corresponding provisions of prior law), services performed for such employer by the *Page 843 
individual after the beginning of his base period (or remuneration for such services) affect eligibility for or increase the amount of, such payment.
 "c. The other provisions of this subdivision to the contrary notwithstanding, beginning with the weeks ending October 7, 1995, the amount of any pension, retirement or retired pay, annuity, or other similar periodic payment under the Social Security Act or the Railroad Retirement Act shall not result in a reduction of benefits under this subdivision.
 "d. If in accordance with this subdivision (8) any individual is awarded pension payments retroactively covering the same period for which the individual received benefits, the retroactive payments shall constitute cause for disqualification and any benefits paid during such period shall be recovered."
An appellate court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. Pryor v. Brown Root USA, Inc.,674 So.2d 45, 47 (Ala. 1995); Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact. Id. In determining whether the evidence creates a genuine issue of material fact, this court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wayne J.Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala. 1993). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
There are no material facts in dispute; therefore, our review is appropriately limited to whether the circuit court correctly determined that the Department and its director were entitled to a summary judgment as a matter of law. The material facts are as follows: In February 1999, Scottsboro Aluminum purchased all the interests of Norandal USA, Inc., including the facility in Scottsboro where the plaintiffs worked. Included in the purchase was a pension plan and fund established by Norandal in which the plaintiffs participated. In trying to sell the facility, Norandal funded the pension plan at a high rate in order to make the business more attractive to potential buyers. As part of the purchase of the pension plan, Scottsboro Aluminum continued under an agreement that Norandal had with the local union of the United Steel Workers of America. That agreement expired in October 1999, and Scottsboro Aluminum entered into a new labor agreement with its employees that increased the benefits provided under the plan. The parties agreed to increase the "multiplier" from $2 to $4 (i.e., an employee's basic retirement benefit was calculated by multiplying the employee's years of *Page 844 
credited service by $4 per month).[1]
Scottsboro Aluminum changed the trustee of the pension-plan funds from Mellon Bank to Bank One. Applications from pensioners were processed by Scottsboro Aluminum and sent to the trustee bank. The parties agreed that Scottsboro Aluminum had made no financial contributions to the pension fund.
Scottsboro Aluminum filed a petition in bankruptcy in 2001, at which time it ceased operations. Pension Benefit Guaranty Corporation ("PBGC") was appointed trustee of the pension plan during the bankruptcy proceedings. PBGC was created by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001
et seq. ("ERISA"), "to administer and enforce a pension plan termination insurance program, to which contributors to both single-member and multiemployer plans were required to pay insurance premiums." Concrete Pipe Prods. of California, Inc.v. Construction Laborers Pension Trust for Southern California,508 U.S. 602, 607, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). PBGC is "a private governmental corporation modeled after the Federal Deposit Insurance Corporation and charged statutorily with protecting and preserving private pension plans." In re CF IFabricators of Utah, Inc., 150 F.3d 1293, 1295 (10th Cir. 1998).
After Scottsboro Aluminum ceased operations, the plaintiffs sought unemployment-compensation benefits from Scottsboro Aluminum as their base-period employer. However, the plaintiffs were already receiving pension benefits because of their involuntary retirement; the compensation referee ultimately determined that they were disqualified from receiving unemployment compensation, pursuant to § 25-4-78(8), because Scottsboro Aluminum "maintained" the pension plan from which the plaintiffs were receiving benefits.
The purpose of the unemployment-compensation law is to provide funds to avoid a period of destitution for involuntarily unemployed workers during their unemployment. Metcalf v.Department of Indus. Relations, 245 Ala. 299, 16 So.2d 787
(1944). The Social Security Act established a federal program designed to assist states in administering their programs.42 U.S.C. § 501 et seq. The states whose unemployment-compensation programs satisfy certain requirements qualify for federal funds to administer their programs. The federal statutes relating to funding are set out in the Social Security Act and the Federal Unemployment Tax Act, 26 U.S.C. § 3301 et seq. (the "FUTA"). Before 1976, some states allowed retirees who received Social Security benefits or public or private pensions to also receive unemployment compensation "even though they actually had withdrawn from the labor force." Watkins v. Cantrell,736 F.2d 933, 937 (4th Cir. 1984). In response, Congress amended the FUTA to require all states receiving federal funds for their unemployment-compensation programs to offset a person's unemployment compensation by the amount of any public or private pension or other similar periodic retirement payment the person received based on the person's previous employment. Id. The FUTA offset requirements apply only if "such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable *Page 845 
law)." 26 U.S.C. § 3304(a)(15)(A)(i). In accordance with the federal requirements, § 25-4-78(8)b.1., Ala. Code 1975, disqualifies an individual from receiving unemployment compensation "[f]or weeks of unemployment" with respect to which that individual is receiving a pension only if "[s]uch payment is made under a plan maintained (or contributed to) by a base period employer. . . ." The plaintiffs contend that the plan from which they received pension benefits was not "maintained" by Scottsboro Aluminum because, they argue, Scottsboro Aluminum had simply undertaken mere ministerial acts with regard to the pension plan.
We recognize that the Unemployment Compensation Act, § 25-4-1, et seq., Ala. Code 1975, "is remedial in character, and its beneficent purpose should be liberally construed, and its provisions of disqualification from benefits should be narrowly construed." Holmes v. Cook, 45 Ala.App. 688, 691,236 So.2d 352, 355 (1970). We also recognize that, in construing a statute, we
 "must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute. Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied. Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says."
Bean Dredging, L.L.C. v. Alabama Dep't of Revenue,855 So.2d 513, 517 (Ala. 2003) (citations omitted).
The plaintiffs argue that the few actions taken by Scottsboro Aluminum with respect to the pension plan did not rise to the level of "maintaining" the pension plan as the Legislature intended in § 25-4-78(8). They argue that the pension plan was not "maintained" because it is now under the control of PBGC, which has determined that the pension "will be unable to pay benefits when due." The plaintiffs argue that Scottsboro Aluminum's failure to add or contribute funds to the plan means that it failed to maintain the plan. To hold that the word "maintain" as used in § 25-4-78(8) means "to contribute to" would render the Legislature's use of the phrase "(or contribute to)" meaningless. "It will not be presumed that the Legislature has employed `meaningless words.'" Reed v. Board of Trustees forAlabama State Univ., 778 So.2d 791, 794 (Ala. 2000), quotingElder v. State, 162 Ala. 41, 45, 50 So. 370, 371 (1909).
Accepting the plaintiffs' position would also defeat Congress's intent of preventing an employee who is receiving retirement benefits from his or her employer from also receiving unemployment-compensation benefits from the unemployment-compensation fund into which the employer paid unemployment-compensation premiums. The purpose of the Unemployment Compensation Act — providing an involuntarily unemployed employee with some compensation — is fulfilled when an employer maintaining or contributing to a pension plan provides the employee with retirement benefits during his unemployment. It should be noted that, in the present case, there was testimony indicating that employees of Scottsboro Aluminum who were not receiving retirement benefits did receive unemployment compensation.
In Holmes v. Cook, supra, an involuntarily retired employee received a monthly payment pursuant to an employer pension plan. This court held that the *Page 846 
employee was not entitled to unemployment compensation because the monthly pension payments the employee received arose out of the employer-employee relationship and equaled or exceeded the benefits provided by the Unemployment Compensation Act. With regard to the pension payment received by the employee, this court stated:
 "It is a payment made to compensate the appellee for his loss of employment and wages by his forced retirement. Since his employer has provided funds equal to or in excess of the benefits to which he would have been entitled under the Unemployment Compensation Law, appellee is disqualified from receiving such benefits so long as he receives the pension, or until such time as he qualifies for benefits from other employment and another employer."
Holmes, 45 Ala.App. at 696, 236 So.2d at 359. While Scottsboro Aluminum did not contribute to the pension fund, it purchased the pension fund as part of its purchase of all of Norandal's interests and the pension benefits went to Scottsboro Aluminum's employees. Whether the "underfunding" of the pension plan violated ERISA, the Internal Revenue Code, or some other law[2] is not the question; rather, the question is whether Scottsboro Aluminum "maintained" the pension plan as that term is contemplated under § 25-4-78(8), thereby disqualifying the plaintiffs from receiving unemployment-compensation benefits while they were simultaneously receiving retirement benefits. We conclude that it did. Accordingly, the trial court's summary judgments in favor of Scottsboro Aluminum are due to be affirmed.
AFFIRMED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
[1] Certain employees were eligible for a supplement of $400 per month, in addition to their retirement benefits, if the facility closed. Entitlement to the supplement was based on an employee's years of service.
[2] See, e.g., Pension Benefit Guar. Corp. v. White Consol.Indus., Inc., 215 F.3d 407 (3d Cir. 2000) (PBGC brought an action under ERISA to recover unfunded pension-plan obligations from employer that had sold unprofitable business to evade pension liabilities); Aldridge v. Lily-Tulip, Inc., Salary Ret.Plan Benefits Comm., 953 F.2d 587 (11th Cir. 1992) (employees brought action against employer alleging violations of ERISA for failure to maintain funding for employees' contingent, forfeitable rights to subsidized early retirement); PensionBenefit Guar. Corp. v. West Side Bakery, Inc., 777 F.Supp. 2
(S.D.N.Y. 1991) (PBGC brought action to collect unpaid employer contributions to establish employer liability in connection with pension plan's termination).